AO 241
(Rev. 01/15)

FILED
U.S. DISTRICT COURT
DISTRICT OF NEBRASKA Page 2

**PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF** 2025 APR -8  AM 9: 40
**HABEAS CORPUS BY A PERSON IN STATE CUSTODY**

OFFICE OF THE CLERK

| United States District Court | District: | Docket or Case No.: |
|---|---|---|
| **Name (under which you were convicted):** Ahmed Mohamed Said | | 8:25CV260 |
| **Place of Confinement:** Nebraska Dept. of Correctional Services Tecumseh State Correctional Institution 2725 Highway 50. Tecumseh, NE 68450. Box 900 | **Prisoner No.:** 88208 | |
| **Petitioner (include the name under which you were convicted)** Ahmed Mohamed Said (Pro Se) | **Respondent (authorized person having custody of petitioner)** v. Rob Jeffreys. Director of Nebraska Dept. of Correctional Service | |
| **The Attorney General of the State of:** Nebraska Mike Hilgers | | |

## PETITION

1. (a) Name and location of court that entered the judgment of conviction you are challenging:

   In The District Court of Hall County, Nebraska. 111 W. 1st Grand Island, NE 68801

   (b) Criminal docket or case number (if you know): CR 17-742

2. (a) Date of the judgment of conviction (if you know): June 25th, 2018

   (b) Date of sentencing: August 28, 2018

3. Length of sentence: Count(1) 60 to 80 years. Count(2) 25 to 30 year

4. In this case, were you convicted on more than one count or of more than one crime?  ☑ Yes  ☐ No

5. Identify all crimes of which you were convicted and sentenced in this case: Count(1) Murder In The Second Degree, Neb. Rev. Stat. 28-303 (1) 1B Felony, 60 to 80 year Sentence. Count(2) Use of a deadly weapon to commit a felony, Neb. Rev. Stat. 28-1205 (1) (a) (b) 11 Felony. 25 to 30 years. The Sentence in Count 2 to be served consecutive to Count 1.

6. (a) What was your plea? (Check one)

   ☑ (1)  Not guilty          ☐ (3)  Nolo contendere (no contest)

   ☐ (2)  Guilty              ☐ (4)  Insanity plea

AO 241
(Rev. 01/15)

Page 3

(b) If you entered a guilty plea to one count or charge and a not guilty plea to another count or charge, what did you plead guilty to and what did you plead not guilty to?   N|A

(c) If you went to trial, what kind of trial did you have? (Check one)

☑ Jury    ☐ Judge only

7.   Did you testify at a pretrial hearing, trial, or a post-trial hearing?

☑ Yes    ☐ No

8.   Did you appeal from the judgment of conviction?

☑ Yes    ☐ No

9.   If you did appeal, answer the following:

(a) Name of court: Nebraska Supreme Court · Direct Appeal

(b) Docket or case number (if you know): A-18-901 · S-'18-901 · Bypass

(c) Result: Affirmed District Courts Judgement

(d) Date of result (if you know): 7-2-20 · Mandate Issued on 7·20·20

(e) Citation to the case (if you know): State v. Said, 306 Neb. 314 (2020)

(f) Grounds raised: 1.) District Court Abused Its Discretion In admitting into evidence Statements which Arose from Unconstitutional Interrogations And the Poisonous Fruit from those Violations of 5th And 6th Amendments. (2) District Court Abused Its Discretion In Admitting Evidence obtained In Violation of Mr. Saids 4th Amendment. (3) District Court Abused its Discretion/Clearly Erred In Prohibiting Mr. Said.

(g) Did you seek further review by a higher state court?    ☐ Yes   ☑ No   Continued See Attached page 1

If yes, answer the following:

(1) Name of court:    N|A

(2) Docket or case number (if you know): _____

(3) Result: _____

(4) Date of result (if you know): _____

Continuuation Page 3

Attached Page 1.

Nebraska Supreme Court ; Direct Appeal ; Case Number A·18·901 ; Grounds Raised ; Appellants Brief

3.) District Court Clearly Erred In Prohibiting Appellant from presenting Evidence to the Jury Relating to the Victims Current Existing Mental State and Alcohol and Drug use to estchlish that the Victim Was a First Aggressor or That the Cause of Death Was Something Other than the Actions of Appellant

4.) District Court Clearly Erred in Denying Appellant the Constitutional Right of Confrontation and the opportunity to Impeach a Witness through Specific Instances of Conduct and for Bias

5.) District Court Clearly Erred In Permitting Irrelevant and Unduly Prejudicial Testimony About DNA Testing Results with No Statistical Significance

AO 241
(Rev. 01/15)

Page 4

(5) Citation to the case (if you know): _____

(6) Grounds raised: _____

_____ N/A _____

(h) Did you file a petition for certiorari in the United States Supreme Court?  ☐ Yes  ☑ No

If yes, answer the following:

(1) Docket or case number (if you know): _____

(2) Result: _____ N/A _____

(3) Date of result (if you know): _____

(4) Citation to the case (if you know): _____

10. Other than the direct appeals listed above, have you previously filed any other petitions, applications, or motions concerning this judgment of conviction in any state court?  ☑ Yes  ☐ No

11. If your answer to Question 10 was "Yes," give the following information:

(a)    (1) Name of court: In Hall County District Court; Grand Island, NE.

(2) Docket or case number (if you know): CR17-742

(3) Date of filing (if you know): 7.14.21

(4) Nature of the proceeding: Post Conviction Proc. Relief. 29-3001 et seq

(5) Grounds raised: (1) Ineffective Assistance of Counsel by Applying the Fruits Doctrine to Suppress An Involuntary Coerced Confession In Violation of Miranda. (2) Ineffective Assistance of Counsel for failing to suppress Involuntary Coerced Confession In Violation of Miranda under Due Process Voluntariness Test. (3) Ineffective Assistance of Counsel failed to litigate 4th Amendment Claim competently. (4) Ineffective Assistance of Counsel failed to Suppress Evidence the Compelled Testimony led to As A Source. (5) Ineffective Assistance of Counsel Deprived Defendant of Right to Present A Complete Defense (6) States Witness Testimony Constitutes plain error.

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?  See Attached page

☐ Yes  ☑ No                                                                            Continued →

(7) Result: District Court Denied Defendants Request for Post Conviction Relief

(8) Date of result (if you know): 8.26.21

Continued From Page 4

Attachment #2

Grounds Raised: Ineffective Assistance of Counsel failed to file A Motion In Limine to Exclude MSAS Video under Neb.Rev.Stat. 403 Due to Unfair Prejudice.

AO 241
(Rev. 01/15)

Page 5

(b) If you filed any second petition, application, or motion, give the same information:

(1) Name of court: Nebraska Court of Appeals

(2) Docket or case number (if you know): A-21-745

(3) Date of filing (if you know): 1·26·22 Brief · Reply Brief 3·31·22

(4) Nature of the proceeding: Appeal from Denial of Post Conviction Relief

(5) Grounds raised: (1) District Court Erred In Ruling Mr. Saids Is Not Entitled to Relief of Mr. Saids claims that Counsel Provided Ineffective Assistance by Using the Fruits Doctrine to Suppress A Coerced Involuntary Statement And for Counsel failing to Suppress the Coerced Involuntary statement Under the Voluntariness Test (2) District Court Erred In failing to Address Mr. Said claim of Ineffective Assistance of Counsel In failing to Litigate 4th And 5th Amendment claim competently. (3) District Court Erred In finding

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

☐ Yes    ☑ No    SEE Attachments

(7) Result: Affirmed Decision By the District Court to Deny Post Conviction Relief

(8) Date of result (if you know): 10·11·22 · Rehearing Overruled on 12·09·22

(c) If you filed any third petition, application, or motion, give the same information:

(1) Name of court: Nebraska Supreme Court

(2) Docket or case number (if you know): A-21-745

(3) Date of filing (if you know): 12·20·22 (Stricken) · Replacement filed 1·3·23

(4) Nature of the proceeding: Petition For Further Review from Court of Appeals

(5) Grounds raised: (1) Court of Appeals Erred In failing to reach and consider Mr. Saids Issues that Counsel provided Ineffective Assistance By Applying the Fruits Doctrine to Suppress A Involuntary Coerced Statement In Violation of Miranda And for Counsel failing to litigate the Compelled Statement under the Voluntariness Test that resulted In Prejudice to Mr. Saids claims And Rights that flowed from the Compelled letter Such As Search Warrants 4th and 5th Amendment Rights And Right to present A Complete Defense By Applying An Inapplicable Collateral Estoppel Doctrine.

SEE → Attachment Continued

Continued from page 6

Attachments
# 3

In the Nebraska Court of Appeals. Appeal from the Denial of Post Conviction Relief from District Court. A-21-745. Dates filed on, 1·26·22 Brief; Reply Brief filed on 3·31·22.

Grounds Raised: (3) District Court Erred In finding Counsel Not Ineffective In Depriving Mr. Said of Right to Present A Complete Defense. (4) States key Witnesses Testimony Were Unsupported by FACTS/Evidence And Prejudiced Petitioner Right to A Fair trial. (5) District Court Erred In Ruling Counsel was not Ineffective for failing to exclude MSAS video under Neb. Rev. Stat. 403 unfair prejudice

In the Nebraska Supreme Court. Petition For Further Review from Court of Appeals. A-21-745 Dated filed 12·20·22 (Stricken) Replacement filed 1·3·23.

Grounds Raised: (2) Court of Appeals Erred As to Mr. Said's Claim that Counsel provided Ineffective Assistance by failing to file A Motion In Limine to Exclude MSAS Video under Neb. Rev. Stat. 403 unfair Prejudice by Corroborating Unconstitutional Evidence Inadmissible And An Unreliable Impeached States Witness Testimony in its opinion that Counsel WAS NOT Ineffective for failing to Exclude MSAS Video under

Continued →

Continued From Page 5

Under Neb. Rev. Stat. 403 unfair prejudice In light of Unconstitutional Cellphone Evidence And An Impeached States Witness testimony Into Consideration (3) Plain Error, States key Witness Testimony Unsupported by FACTS/Evidence And Affected/Prejudiced Mr. Saids Right to A FAIR Trial.

AO 241
(Rev. 01/15)

Page 6

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

☐ Yes    ☑ No

(7) Result:  Denied Petition For Further Review

(8) Date of result (if you know): _____

(d) Did you appeal to the highest state court having jurisdiction over the action taken on your petition, application, or motion?

(1) First petition:  ☑ Yes    ☐ No

(2) Second petition:  ☑ Yes    ☐ No

(3) Third petition:  ☑ Yes    ☐ No

(e) If you did not appeal to the highest state court having jurisdiction, explain why you did not:

N/A

12.    For this petition, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the facts supporting each ground.

CAUTION: To proceed in the federal court, you must ordinarily first exhaust (use up) your available state-court remedies on each ground on which you request action by the federal court. Also, if you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.

GROUND ONE:    Ineffective Assistance of Defense Counsel 6th And 14th Amendments U.S. Constitution

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

Trial Counsel Provided Prejudicial Ineffective Assistance During Mr. Saids Critical Criminal Proceeding hearing by AppHing the Fruits Doctrine to Suppress An Involuntary Coerced Statement In Ex10 Violation of Miranda(Self Incrimination Clause) And 14th Amendment Due Process And for failing to Suppress Involuntary Coerced Statement Ex under the Voluntariness Test Resulted In Prejudice Due to the Fruits Doctrine being Inapplicable to Violation of Miranda And Coerced Statement Depeded on Voluntariness Test. Petitioner Convicted At Trial By the Involuntary compelled Confession SEE Attached page ▶

(b) If you did not exhaust your state remedies on Ground One, explain why: _____

N/A

Continue from page 6

## Ground One

But for Counsels Unprofessional Errors the proceedings would've been different the Involuntary Coerced Statement would've been Suppressed And Inadmissible at Mr. Said trial under the Voluntariness Test 5th and 14th Amendments. Totality of the Circumstances Test. Ineffective Assistance of Counsel Rendered Proceeding Fundamentally unfair At the hearing(Motion to Suppress) And Rendered Results of Trial Unreliable. And state courts Adjudication And Determination Resulted In A Decision that Is/WAS Contrary to Clearly Established Federal LAW And Also Involved An Unreasonable Application of Clearly Established Federal LAW. 2254(d)(1) As Determined by the Supreme Court of the United States Conflicting United State Supreme Courts Precedents.

AO 241
(Rev. 01/15)

Page 7

(c)  **Direct Appeal of Ground One:**

(1) If you appealed from the judgment of conviction, did you raise this issue?    ☐ Yes    ☑ No

(2) If you did not raise this issue in your direct appeal, explain why:  Ineffective Assistance of Counsel were the Same on trial And Direct Apeal. Both Stages

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☑ Yes    ☐ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition:  Motion for Post Conviction Relief

Name and location of the court where the motion or petition was filed:  In the District Court of Hall County NE. 111 W. First St. Grand Island, NE 68801

Docket or case number (if you know):  CR-17-742 • CR 17-742

Date of the court's decision:  8•26•21

Result (attach a copy of the court's opinion or order, if available):  Denial of Motion for Post Conviction Relief

(3) Did you receive a hearing on your motion or petition?    ☐ Yes    ☑ No

(4) Did you appeal from the denial of your motion or petition?    ☑ Yes    ☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?    ☑ Yes    ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:  In the Nebraska Court of Appeals. 2413 State Capitol Lincoln, NE 68509 • P.O. Box 98910

Docket or case number (if you know):  A-21-745

Date of the court's decision:  10•11•22

Result (attach a copy of the court's opinion or order, if available):  Affirmed District Courts Decision to Deny Post Conviction Relief

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

N/A

AO 241
(Rev. 01/15)

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have

used to exhaust your state remedies on Ground One:    N/A

_____

**GROUND TWO:**    Ineffective Assistance of Counsel
6th And 14th Amendments U.S. Constitution

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

Trial Counsel Provided Prejudicial Ineffective Assistance by failing to Suppress the Evidence the Compelled Involuntary Statement led to As A Source which was Search Warrent And Evidence Derived from Search of Petitioners Cellphone at trial which resulted In Prejudice to Petitioners Fifth And 14th Amendments Privilege prohibiting Admission In the Criminal Case of Evidence Derived from the Compelled Statement But for Trial Counsels unprofessional Errors the Results would be different. Compelled Statement Convicted petitioner. And Fruits of Compulsion Miranda Violation. at trial

(b) If you did not exhaust your state remedies on Ground Two, explain why:    N/A

_____

_____

_____

(c)    **Direct Appeal of Ground Two:**

(1) If you appealed from the judgment of conviction, did you raise this issue?    ☐ Yes    ☑ No

SEE
Attached
page →

(2) If you did not raise this issue in your direct appeal, explain why:    Counsel that provided Ineffective Assistance Were the Same At trial And Direct Appeal Stages.

(d)    **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☑ Yes    ☐ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition:    Motion for Post Conviction Relief

Name and location of the court where the motion or petition was filed:    In the District Court of Hall County, NE. 111 W. 1st Grand Island, NE, 68501

Docket or case number (if you know):    CR 17 - 742

Date of the court's decision:    8·26·21

## Ground Two

Compelled Statement that Convicted Petitioner And the Evidence It the Compelled Statement led to As A Source that Also Convicted Petitioner at trial would've been suppressed And Inadmissible At trial but for Counsels Unprofessional Errors Rendering Proceedings Fundamentally Unfair And Results of Trial Unreliable Ex. 10, 22, 23, 24, 29, 31, 58, 46. State Courts Adjudication And Determination resulted In A Decision that Was Contrary to And Involved An unreasonable Application of clearly Established Federal LAW. 2254(d)(1) As Determined by the United States, Supreme Court.

AO 241
(Rev. 01/15)

Page 9

Result (attach a copy of the court's opinion or order, if available): Denial of PostConviction Relief

(3) Did you receive a hearing on your motion or petition?         ☐ Yes    ☑ No

(4) Did you appeal from the denial of your motion or petition?    ☑ Yes    ☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?    ☑ Yes    ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: In the Nebraska Court of Appeals. 2413 State Capitol Lincoln, NE 68509 P.O. Box 98910

Docket or case number (if you know): A-21-745

Date of the court's decision: 10.11.22

Result (attach a copy of the court's opinion or order, if available): Affirmed District Courts Denial of Post conviction Relief

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

N|A

(e)    **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Two :

N|A

**GROUND THREE:** Ineffective Assistance of Counsel 6th And 14th Amendments of U.S. Constitution

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.): SEE ATTACHMENTS →

Trial Defense Counsel Provided Prejudicial Ineffective Assistance by depriving Mr. Said his 6th And 14th Amendments Rights to Present A Complete Defense by establishing the Involuntary Compelled Statement In Violation of Miranda And Due Process As Admissible Including Evidence Derived from compelled Statement Such as Search Warrants And Evidence Derived from Search of Mr. Said's cellphone by Applying Fruits Doctrine at trial. through Case In chief resulting In prejudice Due to the Trial Court Estopping Mr. Said from Asserting A claim or right that Contradicts the Allegedly Involuntary Compelled Statement And Fruits of In which Trial counsels prejudicial Ineffective Assistance Admitted. It As True before the trial Court. Especially to the party It resulted In prejudice to that has acquiesced In the position taken by trial Counsel Ineffective Assistance.

8:25-cv-00260-JFB-PRSE Doc # 1 Filed: 04/08/25 Page 15 of 75 - Page ID # 15

Continued from Pg. 9

Attachments Continued # 3 from Page 9.

## Grand Three

But for Trial Defense Counsels Unprofessional Errors the results of the proceedings Would've been Different Petitioner Mr. Said would've been Able to Present his Complete Defense of the Victim Mr. Abdulma khamis Self Inflicted his Injuries of blunt force trauma by falling Down of flight of stairs due to the Alcohol And Drugs playing A Source to him falling down the stairs at trial. resulting And. rendering the proceeding fundamentally unfair And the results of the trial Unreliable. Petitioner would've been Able to present this ground of defense In the Abscence of Unconstitutional Compelled Involuntary Statement In Violation of Miranda And Evidence Derived from Compelled Such As Search Warrants And Evidence Derived from. Mr. Saids Cellphone. At trial And Direct Appeal Stages. State courts adjudication And determination resulted In A Decision that Is Contrary to And Involved An unreasonable application of clearly Established Federal LAW. 2254(d)(1). As Determined by the United States Supreme Court.

AO 241
(Rev. 01/15)

Page 10

(b) If you did not exhaust your state remedies on Ground Three, explain why:

N/A

(c)   **Direct Appeal of Ground Three:**

(1) If you appealed from the judgment of conviction, did you raise this issue?   ☐ Yes   ☑ No

(2) If you did not raise this issue in your direct appeal, explain why:   Counsel that provided prejudicial Ineffective Assistance Were the Same At trial And Direct Appeal Stages.

(d)   **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?
☑ Yes   ☐ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition:   Motion for Post Conviction Relief

Name and location of the court where the motion or petition was filed:   In the District Court of Hall County, NE. 111 W. 1st Grand Island, NE 68801

Docket or case number (if you know):   CR 17-742

Date of the court's decision:   8·26·21

Result (attach a copy of the court's opinion or order, if available):   Denied Motion for Post Conviction Relief

(3) Did you receive a hearing on your motion or petition?   ☐ Yes   ☑ No

(4) Did you appeal from the denial of your motion or petition?   ☑ Yes   ☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?   ☑ Yes   ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:   In the Nebraska Court of Appeals. 2413 State Capitol Lincoln, NE 68509

Docket or case number (if you know):   A-21-745

Date of the court's decision:   10·11·22

Result (attach a copy of the court's opinion or order, if available):   Affirmed Decision of District Court to Deny Post Conviction Relief

AO 241
(Rev. 01/15)                                                                        Page 11

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

N|A

(e)   **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Three:

N|A

**GROUND FOUR:** Ineffective Assistance of Counsel 6th And 14th Amendments of U.S. Constitution

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

Trial Counsel Provided Prejudicial Ineffective Assistance by failing to file a motion In Limine to Exclude Prejudicial Surveillance Video at MSAS Car Dealer Shop under Mr. Said Statutorial rights Neb. Rev. Stat. 27-403 under unfair prejudice due to undue tendency to suggest a decision based on improper basis. The MSAS Video does Not show Any Evidence And Elements of Murder taking place which resulted In prejudice to Petitioner unfair.

(b) If you did not exhaust your state remedies on Ground Four, explain why:         SEE
                                                                                     Continuance

N|A

(c)   **Direct Appeal of Ground Four:**

(1) If you appealed from the judgment of conviction, did you raise this issue?   ☐ Yes   ☑ No

(2) If you did not raise this issue in your direct appeal, explain why: Counsel that provided Ineffective Assistance Were the Same on both trial And Direct Appeal Stages.

(d)   **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☑ Yes   ☐ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: Motion for Post Conviction Relief

## Ground Four

Due to the MSAS Video Allowing the Fact finder to Mr. Said (Petitioner) guilty on A ground different from proof specific to the offense charged. But for Counsels unprofessional Errors the results of the proceeding Would've been different. Ineffective Assistance of Counsel Rendered the proceedings fundamentally Unfair And the Results of the Trial Unreliable. Unreliable. Ex. 139. State Courts adjudication And determination resulted In A Decision That Is Contrary to And Involved An Unreasonable Application of Clearly Established Federal LAW. And resulted In A decision that Was based on An Unreasonable determination of the facts In light of Evidence presented. 2254(d)(1)(2). As Determined by the Supreme Court of the United States.

Page 12

Name and location of the court where the motion or petition was filed: In the District Court of Hall County, NE. 111 W. 1st Grand Island, NE 68801

Docket or case number (if you know): CR 17-742

Date of the court's decision: 8.26.21

Result (attach a copy of the court's opinion or order, if available): Denial of Post Conviction Relief

(3) Did you receive a hearing on your motion or petition?     ☐ Yes    ☑ No

(4) Did you appeal from the denial of your motion or petition?     ☑ Yes    ☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?    ☑ Yes    ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: In the Nebraska Court of Appeals 2413 State Capitol, Lincoln, NE 68509

Docket or case number (if you know): A-21-745

Date of the court's decision: 10.11.22

Result (attach a copy of the court's opinion or order, if available): Affirmed District Courts Denial of Post Conviction Relief

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

N/A

(e)     **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Four:

N/A

## Ground Five:

Ineffective Assistance of Counsel failed to litigate Mr. Saids 4th Amendment claim Competently

Supporting FACTS: Defense Counsel Provided Prejudicial Ineffective Assistance by failing to litigate Mr. Saids 4th And 14th Amendment Competently by failing to challenge the Probable Cause for Search Warrants for Mr. Saids Cellphone being the Information the police provided to Mr. Said by coercion And compelled him with After the police Violated Mr. Saids Miranda on April 20, 2017. But for Cunsels Unprofessional Errors the Results Would've been Different Search Warrant And Evidence Derived from Would've been Inadmissible And Suppressed at trial Due to the the Search Warrants being based upon knowingly And Recklessly Made falsehoods. As A Result of counsel prejudicial performance Search Warrants And Evidence Derived therefrom were Admitted At trial And Mr. Said got convicted. But for Counsels Unprofessional Errors the Results Would've been Different. Ineffective Assistance of Counsel Rendered Proceedings fundamentally unfair And Results of trial Unreliable Direct Appeal on Ground FIVE:   ☐ yes   ☑ NO Why? Counsel that Provided Ineffective Assistance were the Same At trial And Direct Appeal.

Continued NEXT →

## Ground FIVE

Post Conviction Proceeding on Ground Five : yes

Motion : Post Conviction Relief: CASE#: CR 17-742:

NAME And Court : Hall County District Court: Decision date 8·26·21

#ase:CR17-742:Result : Denial: Decision DATE: 8·26·21

Hearing: No

Appeal the Denial: yes

Raise this Issue On Appeal: yes

NAME Court : Nebraska Court of Appeals

CASE # : A-21-745

Decision date: 10·11·22

Result : Denial

State Courts Adjudication And Decision Resulted In A Decision that Is Contrary to And Involved An unreasonable Application of Clearly Established Federal LAW. 2254(d)(i), As Determined by the Supreme Court of the United States.

## Ground Six

Plain Error On the Record And File In This Case Prejudically Affected Mr. Saids Substantial Rights to A Fair Trial AnD, And If left Uncorrected would Result In A Miscarriage of Justice And In A Damage to the Integrity, Reputation And Fairness of the Judicial Process

Supporting FACTS: In this case the plain error Is The states key witness Testimony being Unsupported by Facts And Evidence. The States Witness Hussein Nuri testified that Mr. Ahmed Said, Petitioner told him (Nuri) that Mr. Said struck the Victim Mr. Abdulma khamis twice In the back of the head with a metal pole In the alley At MsAS Cardealer Shop. The MsAS CAR Shop video Camera contradicts the states witness testimony. The camera does Not show or display Mr. Said having A Metal pole Nor Striking Mr. khamis with a metal pole. The Camera shows And Proves Mr. Abdulma Khamis being okay fine And Ultimately Not Injured. After the brief confrontation both partys walked Away. 3 Eye Witnesses spoke with And observed Mr. khamis 40 minutes later And the other 1 hour And 12 Minutes later And testified Saying that Mr. khamis Was Just fine And Okay And he only had A cut on his Right hand. At No Point

<u>Ground Six Continued</u>

that Night on 4·12·17 Did Mr. khamis Ever Say to the couple ( Sirena And her Boyfriend Chol) that he had been In A fight that Night. Isaac Agory the third Eyewitness spoke to Mr. khamis After Sirena And Chol 40 Minutes later And testified And Said Nothing About Mr. Abdulme khamis being Injured. On the Night of 4·12·17. Finally Forensic Pathologist Dr. David Jaskierny testified to the Metal Pole Theory And stated there was No Way of Determining what object was used. Nothing Was Present to Suggest A Metal object Was used. And there was No linear Injury to Support A Finding that A Pole like object was employed. A Nurse from St. Francis hospital testified there were No Injuries to the back of Mr. khamis head observed And this case Involved a closed head Injury And there's No Open Areas of the Skin on the Victims head. Mr. Nuri the States key witness Also Admitted he was In the county jail of half the day of 4·12·17 incidental disagreement And admitted to being Convicted of false Reporting to police on his record And has been Impeached for Inconsistent Stories / Statement At Petitioners trial. Therefore the States key witness testimony were unsupported by facts And Evidence And prejudiced Petitioners Right to A Fair trial but for this Plain Error the Results of the proceedings. Would've been Different. Miscarriage of justice will occur if claim Is Not Addressed on Merits.

# Ground Seven

Admission of Statements In Violation of Miranda 5th Amendment And 14th Amendment of the United States Constitution At Trial

The April 20, 2017 interrogation began with the reading of the Miranda Rights. At approximately the 1:45 minute mark, Investigator Sloan asks "Are you willing to speak to Me without consulting a lawyer or having a lawyer here with you?" Mr. Said says "No." Investigator Sloan responds "You do Not want to talk to me?" Mr. Said states No, I do Not. Investigator Sloan then Immediately tries to get Mr. Said to talk by stating there Are two sides to every story And these question Are separate from the night before. The Interrogation Continued Even After Mr. Said invoked And continued on Invoking his right to remain silent throughout the Interrogation It Is Important to Note that Error committed was Not Harmless Error. The Interview Provided the Jury with statements directly contradicted by other Evidence Such As whether Mr. Saids leg had just A slight twist And whether he ever wore An Orthopedic boot. Mr. Said was confronted with information that he had An Orthopedic boot (Even though he did) Mr. Said

## Ground Seven

Continued to Deny It that he had A boat And A leg Injury. Mr. Said Also Denied knowing Hamdella Eldihaiban, A person others would link to A group Associated At Pioneer Park. Mr. Said did not say Anything About being At his sisters house (Even though he was). Mr. Said Denied drinking alcohol on the night of April 12, 2017 And stated two hispanic males, Jesus And Demetrius were at the park. Each of these matters would be contradicted by other witnesses testimony. The stated had put Mr. Saids credibility At Issue even though he did Not testify And they did this by providing Evidence to show Mr. Said lied During that Interrogation to the Jury.

In Respect to the June 5, 2017 Interrogation the Subject matter was the same-asking questions About the Death of Mr. khemis. Mr. Saids Constitutional Rights were Not scrupulously honored. And the Fact the Jury heard About "The confiscation of the Involuntary Coerced Inculpatory letter In Violation of Due Process And Miranda was harmful And Unfairly Prejudicial to Mr. Said At trial And had A Substantial And Injurious effect to convict Mr. Said.

Direct Appeal Proceeding On Ground Seven: Yes

# Ground Eight

Permitting Into Admission Irrelevant And Unfair Unduly Prejudicial Testimony About DNA Testing Results With No Statistical Significance

Miss Brandy Porter was the DNA Expert from the Nebraska State Patrol. She was called to As A Defense Witness to Establish that Mr. Said was not A Contributor to Any of the Stains found on the clothing of Mr. Ithamis Nor Upon the stains on the stairs And door of Mr. Kouri. Over objection, the state was permitted to Ask About Each Time the Tests revealed a minor contributor, but was unable to make A Scientific conclusion because the data was Uninterpretable. On each of those occasions Mr. Said was Excluded As A Major Contributor. A limiting Instruction After the Scientist discussed the uninterpretable DNA findings. No statistical Significance was reachable in respect to Any of the minor contributors. No Scientific conclusion was possible. Evidence of those findings or non-findings were Irrelevant And Inadmissible. Miss Porter however was permitted to Assign the number of Minor Contributors without including or Excluding Mr. Said. The Jury was left to ponder "Could It BE Mr. Said?". The Curative Instruction

# Ground Eight

Did Not And Could Not Remove the taint of the speculation that was allowed to creep Into trial In Violation of Mr. Said statutorial Rights of Neb. Rev. Stat. 403 And state law concluding "Inconclusive And Uninterpretable DNA Testings Are Irrelevant And Inadmissible, Due to they do Not help the factfinder Assess whether the defendant Is or Is Not the source of the DNA Sample. And because of the Significance that Jurors will likely Attach to DNA Evidence, the value of Inconclusive testing results Is Substantially outweighed by the danger that the Evidence Will mislead the jurors. Thus the general Improprieties that Occurred in this State proceeding violated Mr. Said right to A fair trial And Are Cognizable only because the state-court created Fundamental Unfairness that violated Petitioners Fourteenth Amendment right to Due Process. by Allowing the prosecution to use Uninterpretable DNA testings results At trial Against Mr. Said. And substantially And Injuriously Affected the Verdict (of Conviction) because the jury became Unduly And unfairly prejudiced towards Mr. Said.

Direct Appeal Proceeding On Ground Eight: yes

AO 241
(Rev. 01/15)                                                                    Page 13

13.   Please answer these additional questions about the petition you are filing:

(a)   Have all grounds for relief that you have raised in this petition been presented to the highest state court having jurisdiction?   ☑ Yes      ☐ No

If your answer is "No," state which grounds have not been so presented and give your reason(s) for not presenting them:   N\A

(b)   Is there any ground in this petition that has not been presented in some state or federal court?  If so, which ground or grounds have not been presented, and state your reasons for not presenting them:   N\A

14.   Have you previously filed any type of petition, application, or motion in a federal court regarding the conviction that you challenge in this petition?   ☐ Yes   ☑ No

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, the issues raised, the date of the court's decision, and the result for each petition, application, or motion filed.  Attach a copy of any court opinion or order, if available.   N\A

15.   Do you have any petition or appeal now pending (filed and not decided yet) in any court, either state or federal, for the judgment you are challenging?   ☐ Yes   ☑ No

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues raised.

AO 241
(Rev. 01/15)

Page 14

16.    Give the name and address, if you know, of each attorney who represented you in the following stages of the judgment you are challenging:

(a) At preliminary hearing: Matthew J. McDonald And Robert Kortus. Nebraska Commission on Public Advocacy.140 N. 8th St. Suite 270 Lincoln NE 68508

(b) At arraignment and plea: Matthew J. McDonald And Robert Kortus. Nebraska Comission on Public Advocacy.140 N. 8th St. Suite 270 Lincoln, NE 68508

(c) At trial: Matthew J. McDonald And Robert Kortus. Nebraska Commission on Public Advocacy.140 N. 8th St. Suite 270 Lincoln, NE 68508

(d) At sentencing: Matthew J. McDonald And Robert Kortus. Nebraska Commission on Public Advocacy. 140 No.8th St. Suite 270 Lincoln NE 68508

(e) On appeal: Matthew J. McDonald And Robert Kortus. Nebraska Commission on Public Advocacy.140 N. 8th St. Suite 270 Lincoln NE 68508

(f) In any post-conviction proceeding: Pro Se Ahmed M. Said Petitioner In Custody Nebraska Dept. of Correctional Services

(g) On appeal from any ruling against you in a post-conviction proceeding: Pro Se, Ahmed M. Said Petitioner In Custody Nebraska Dept. of Correctional Services

17.    Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging?        ☐ Yes    ☑ No

(a) If so, give name and location of court that imposed the other sentence you will serve in the future:

N/A

(b) Give the date the other sentence was imposed: N/A

(c) Give the length of the other sentence:

(d) Have you filed, or do you plan to file, any petition that challenges the judgment or sentence to be served in the future?        ☐ Yes    ☐ No

18.    TIMELINESS OF PETITION: If your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2244(d) does not bar your petition.*

Petitioner Ahmed M. Said Invokes Actual Innocence In this Extraordinary Case the Constitutional Violations In this petition Resulted In The Conviction of petitioner Who Is Actually Innocent And No Reasonable Juror Would've found Petitioner Guilty but for the Constitutional Violation In this petition. Implicating Fundamental Miscarriage of Justice And Such Violations

AO 241
(Rev. 01/15)

Page 15

Are of Constitutional Magnitude And Are Cognizable due to State-Court proceedings created Fundamental Unfairness that Violated Petitioners Ahmed M. Said 14th Amendment of the United States Constitution Right to Due Process. Petitioners Imprisonment/Custody Cannot And Is Not In Conformity with the Fundamental Requirements of the Due Process LAW 14th Amendment. And Is Inconsistent with the Rudimentary Demands of A Fair Procedure. Sensitivity to the Injustice of Incarcerating An Innocent Individual should not Abate when the Impediment is AEDPA's Statue of limitation § 2244(d)(1). In the Interest of Justice. Petitioner moves this Honorable Court to Fiat Justitia that Renders Imprisonment/Custody Void under the United States Constitution. Miscarriage of Justice will occur if Petitioners Constitutional Violation claims Is Not Heard/Addressed on the Merits of this petition. Including claims that were procedurally defaulted. to Ensure Fundamental Fairness. 14th Amendment Due Process. Mr. Said Demonstrates In this petition that But for the Constitutional Errors In this petition NO reasonable factfinder would be found Mr. Said guilty of the underlying offense. Constitutional Errors had A Substantial Effect And Injurious to Convict Petitioner at trial.

* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2244(d) provides in part that:

(1)     A one-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody  pursuant to the judgment of a State court.  The limitation period shall run from the latest of -

(A)     the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B)     the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such state action;

(C)     the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D)     the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

AO 241
(Rev. 01/15)

Page 16

(2)    The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Therefore, petitioner asks that the Court grant the following relief: Petitioner Requests Immediate Release from unlawful custody/Imprisonment thats In Violation of the United States Constitutionc Rights And law And Due Process. And Grant Asks that the Court Grant the Writ.

or any other relief to which petitioner may be entitled.

_____
Signature of Attorney (if any)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Petition for Writ of Habeas Corpus was placed in the prison mailing system on  April 2, 2025  (month, date, year).

Executed (signed) on  April 2, 2025  (date).

_____
Pro Se #88208
Signature of Petitioner

If the person signing is not petitioner, state relationship to petitioner and explain why petitioner is not signing this petition.

_____

_____

_____

_____

<u>Verification of Authenticity of Attachments</u>

I hereby swear And Affirm, under penalty of perjury, that the Documents listed As A trough C Are true, Authentic And Accurate Copies of the State Record without altering.

So Sworn this day of April 2, 2025

Ahmed M. Said pro Se
# 88208, Nebraska Dept.
of Correctional Facility
2725 Highway 50. Tecumseh,
NE 68450.

<u>Notarized Certificate of Service</u>

I, Petitioner Ahmed Said, hereby Certify that on this 2 day of April 2025, I served a true copy of Original of the foregoing: Petition for writ of Habeas Corpus with Attachments A through __ upon, Mike Hilgers, Attorney General, 2115 State Capitol, P.O. Box 98920 Lincoln, NE 68509. by First Class Mail through Nebraska Dept. of Correctional Services Institutional Mailing System.

Ahmed Said

Ahmed M. Said Pro Se 88208
Nebraska Dept. of Correctional
Services, 2725 Highway 50
Tecumseh, NE 68450

State of Nebraska ) SS: Notarization
County of Johnson )

General Notary -- State of Nebraska
CHRISTIAN SANCHEZ
My Comm. Exp. Aug. 29, 2028.

Exp. Aug 29, 2028

Subscribed to And Sworn to before Me, A Notary Public In And For the Above State And County on this 2 day of April 2025

Christian Sanchez

Notary Public

Copies of State Record

Document A

Opinion of the Supreme Court of
Nebraska

On  Direct Appeal

**FILED**

JUL 0 6 2020

OPINION OF THE SUPREME COURT OF NEBRASKA

**VALORIE BENDIXEN
CLERK OF DISTRICT COURT**

CR 17-742

### Case Title

STATE OF NEBRASKA, APPELLEE,
V.
AHMED SAID, APPELLANT.

### Case Caption

STATE V. SAID

⊥ 6 ⌐ 30

Filed July 2, 2020.   No. S-18-901.

Appeal from the District Court for Hall County; MARK J. YOUNG, Judge. Affirmed.

Robert W. Kortus, of Nebraska Commission on Public Advocacy, for appellant.

Douglas J. Peterson, Attorney General, and Stacy M. Foust for appellee.

000514382D08

STATE v. SAID

Filed July 2, 2020.    No. S-18-901.

1. **Motions to Suppress: Confessions: Constitutional Law: Miranda Rights: Appeal and Error.** In reviewing a motion to suppress a statement based on its claimed involuntariness, including claims that law enforcement procured it by violating the safeguards established by the U.S. Supreme Court in *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), an appellate court applies a two-part standard of review. Regarding historical facts, an appellate court reviews the trial court's findings for clear error. Whether those facts meet constitutional standards, however, is a question of law, which an appellate court reviews independently of the trial court's determination.

2. **Constitutional Law: Search and Seizure: Motions to Suppress: Appeal and Error.** In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review. Regarding historical facts, an appellate court reviews the trial court's findings for clear error, but whether those facts trigger or violate Fourth Amendment protection is a question of law that an appellate court reviews independently of the trial court's determination.

3. **Rules of Evidence.** In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules; judicial discretion is involved only when the rules make discretion a factor in determining admissibility.

4. **Rules of Evidence: Appeal and Error.** Where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, an appellate court reviews the admissibility of evidence for an abuse of discretion.

5. **Trial: Rules of Evidence.** A trial court exercises its discretion in determining whether evidence is relevant and whether its prejudicial effect substantially outweighs its probative value.

6. **Judgments: Words and Phrases.** An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.

7. **Trial: Evidence: Appeal and Error.** A trial court's determination of the relevancy and admissibility of evidence must be upheld in the absence of an abuse of discretion.

8. **Miranda Rights: Self-Incrimination.** The safeguards of *Miranda* ensure that the individual's right to choose between speech and silence remains unfettered throughout the interrogation process.

9. ____: ____. If the suspect indicates that he or she wishes to remain silent or that he or she wants an attorney, the interrogation must cease.

10. **Miranda Rights: Right to Counsel: Police Officers and Sheriffs: Self-Incrimination.** In order to require cessation of custodial interrogation, the subject's invocation of the right to counsel must be unambiguous and unequivocal. Once a person has invoked his or her right to remain silent, the police must scrupulously honor that right.

- 2 -

Page 238 of 338

11. **Constitutional Law: Trial: Convictions: Appeal and Error.** Even constitutional error does not automatically require reversal of a conviction if that error was a trial error and not a structural defect.

12. **Trial: Evidence: Appeal and Error.** The admission of an improperly obtained statement is a trial error, and so its erroneous admission is subject to harmless error analysis.

13. **Trial: Verdicts: Appeal and Error.** Harmless error review looks to the basis on which the trier of fact actually rested its verdict; the inquiry is not whether in a trial that occurred without the error a guilty verdict would surely have been rendered, but whether the actual guilty verdict rendered in the questioned trial was surely unattributable to the error.

14. **Search and Seizure: Police Officers and Sheriffs: Evidence.** Evidence must be excluded as fruit of the poisonous tree if it is discovered by the exploitation of illegal police conduct.

15. **Evidence: Police Officers and Sheriffs.** Not all evidence is fruit of the poisonous tree simply because it would not have come to light but for the illegal action of the police. The question is whether the evidence has been obtained by exploiting the primary illegality or has instead been obtained by means sufficiently distinguishable so as to be purged of the primary taint.

16. **Search Warrants: Affidavits: Probable Cause: Appeal and Error.** In reviewing the strength of an affidavit submitted as a basis for finding probable cause to issue a search warrant, an appellate court applies a totality of the circumstances test. The question is whether, under the totality of the circumstances illustrated by the affidavit, the issuing magistrate had a substantial basis for finding that the affidavit established probable cause.

17. **Search Warrants: Probable Cause: Words and Phrases.** Probable cause sufficient to justify issuance of a search warrant means a fair probability that contraband or evidence of a crime will be found.

18. **Search Warrants: Affidavits: Evidence: Appeal and Error.** In evaluating the sufficiency of an affidavit used to obtain a search warrant, an appellate court is restricted to consideration of the information and circumstances contained within the four corners of the affidavit, and evidence which emerges after the warrant is issued has no bearing on whether the warrant was validly issued.

19. **Constitutional Law: Search Warrants.** The Fourth Amendment to the U.S. Constitution and Neb. Const. art. I, § 7, require that a search warrant be particular in describing the place to be searched and the persons or things to be seized.

20. **Constitutional Law: Search Warrants: Police Officers and Sheriffs.** To satisfy the particularity requirement of the Fourth Amendment, a warrant must be sufficiently definite to enable the searching officer to identify the property authorized to be seized.

21. **Search Warrants.** The purpose of the particularity requirement as it relates to warrants is to prevent general searches, and whether a warrant is insufficiently particular depends upon the facts and circumstances of each case.

22. **Search Warrants: Affidavits.** An inadvertent defect in a search warrant may be cured by reference to the affidavit used to obtain the warrant if the affidavit is incorporated in the warrant or referred to in the warrant and the affidavit accompanies the warrant.

23. **Criminal Law: Constitutional Law: Due Process.** Whether rooted directly in the Due Process Clause of the 14th Amendment or in the Compulsory Process or Confrontation Clauses

Page 239 of 338

of the 6th Amendment, the federal Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense.

24. **Evidence.** Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Relevancy requires only that the probative value be something more than nothing.

25. **Evidence: Words and Phrases.** Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. Unfair prejudice means an undue tendency to suggest a decision based on an improper basis.

26. **DNA Testing: Evidence.** Inconclusive DNA results are irrelevant because they do not help the fact finder assess whether the defendant is or is not the source of the sample.

27. **Rules of Evidence.** "Opening the door" is a rule of expanded relevancy which authorizes admitting evidence that would otherwise be irrelevant in order to respond to (1) admissible evidence which generates an issue or (2) inadmissible evidence admitted by the court over objection.

Page 240 of 338

HEAVICAN, C.J., MILLER-LERMAN, CASSEL, STACY, PAPIK, and FREUDENBERG, JJ.

MILLER-LERMAN, J.

## NATURE OF CASE

Ahmed Said appeals his convictions and sentences in the district court for Hall County for second degree murder and use of a weapon to commit a felony. Said claims on appeal that the court erred when it (1) admitted statements he made as a result of allegedly unconstitutional interrogations, (2) admitted evidence from an allegedly unconstitutional search of his cell phone, (3) prohibited him from presenting evidence regarding the victim's mental health and use of alcohol and prescription drugs, (4) denied him the right to impeach a witness' testimony with cross-examination regarding specific instances of conduct and bias, and (5) allowed evidence regarding DNA testing, which Said argued was inconclusive and therefore irrelevant and unfairly prejudicial. We affirm Said's convictions and sentences.

## STATEMENT OF FACTS

*Investigation of Death and*
*Charges Against Said.*

The State charged Said with second degree murder and use of a weapon to commit a felony in connection with the death of Adulma Khamis. Around 7 a.m. on April 13, 2017, a police officer who was responding to a call for a welfare check found Khamis lying unconscious on the ground outside a residence located approximately five blocks away from Pioneer Park in Grand Island, Nebraska. Khamis was taken to a hospital, where it was determined that he was comatose and had multiple fractures to his skull and a large amount of bleeding between his skull and brain. Surgery was performed, but Khamis died several days later, on April 19. The pathologist who performed the autopsy on Khamis determined that the cause of death was "blunt trauma to the head resulting in skull fractures and significant trauma to the left side of the brain."

After learning from the emergency room doctor that Khamis had suffered serious head trauma and a fractured skull, the responding officer and other police began to investigate the matter as a criminal one. The responding officer secured the location where he had found Khamis. He also attempted to speak with Khalil Kouri, a man the officer knew from previous contacts to live in the residence outside of which Khamis had been found. Kouri was not there at the time, but police later contacted him at work.

Kouri testified at trial in this case that Khamis was a friend of his and that Khamis would sometimes visit Kouri's home. Kouri testified that on the evening of April 12, 2017, a few friends, not including Khamis, were socializing at Kouri's residence. Kouri recalled that at some point in the evening, he heard an unknown person knocking on his door, but that he told the person to go away because he had to work in the morning and wanted to go to sleep. Kouri testified that when he went to work at 5 a.m. the next day, it was still dark and he did not notice anything unusual.

As the investigation continued, Said became a suspect based on evidence including security camera videos that, the parties stipulated at trial, depicted a fight between Said and Khamis on the evening of April 12, 2017. The security cameras were from a business located near Pioneer Park.

-5-

Page 241 of 338

The State's theory of the case at trial was that Said had caused the fatal injuries to Khamis by striking him in the head with a metal pole and that Khamis had remained conscious and mobile for some time after the injury, eventually becoming unconscious after attempting to be admitted to Kouri's residence. Said asserted as part of his defense that Khamis had been the aggressor in the fight and that Said's actions in the fight had been taken in self-defense. Said further attempted to develop Kouri as an alternate suspect in causing Khamis' death. Evidence at Said's trial included numerous exhibits and testimony by numerous witnesses; the discussion of evidence and proceedings hereinafter focuses on matters related to issues raised in this appeal.

*Motion to Suppress Said's Statements*
*in Interrogations and Letter.*

Prior to trial, Said filed a motion to suppress statements he made as a result of what he asserted were unconstitutional custodial interrogations. Said specified four separate interrogations in his motion, but on appeal, he focuses on two dates--April 20 and June 5, 2017. Said also sought to suppress a letter dated April 29, 2017, that he had written to his sister while he was in prison; he asserted that the letter was improperly seized as "fruit of the poisonous tree" stemming from prior interrogations. After an evidentiary hearing, the district court granted in part and overruled in part Said's motion to suppress the statements and the letter.

Regarding the April 20, 2017, interrogation, evidence at the hearing indicated that Said had been arrested on April 19 on a charge unrelated to the present case. Officers, including Steven Sloan, interviewed Said on April 19. Sloan returned on April 20 and asked Said to discuss a different case--the assault of Khamis. A recording of the interview indicated that at the beginning of the interview, Said appeared willing to talk to Sloan. But after Sloan read Said his *Miranda* rights and asked whether he was willing to speak without an attorney, Said replied, "Uh, no." After Sloan asked again whether Said "want[ed] to talk to [him]," Said replied, "[N]o, I do not." Sloan did not then stop the interview. Instead, Sloan continued attempting to convince Said to talk and, inter alia, explained that he wanted to talk about "something . . . different" from what they had talked about on April 19. Said then agreed to speak with Sloan, and they discussed the present case. At approximately 21 minutes into the interview, Said stated, "[N]o more talking" and "I'm just going to stop talking and just cut off because I'm trying to go back . . . ." Sloan continued the interview and confronted Said with evidence connected to the investigation regarding Khamis.

In its order on the motion to suppress, the district court found that statements Said made in the April 19, 2017, interview were voluntary and that officers honored Said's request when he indicated that he wished to stop talking. The court determined that because the April 20 interview involved a different case, Said's assertion of his rights at the end of the April 19 interview did not bar the April 20 interview. The court determined that although at the beginning of the April 20 interview, Said stated he did not want to speak without an attorney, Sloan "attempted to clarify" and Said subsequently spoke voluntarily until the 21-minute mark, when he said, "[N]o more talking." The court concluded that Said's statements prior to the 21-minute mark were voluntary but that statements after that point should be suppressed.

Sloan returned to speak with Said on June 5, 2017. Sloan read Said his *Miranda* rights, and Said waived them. The district court determined that Said's statements and his waiver of

-6-

rights on June 5 were voluntary. The court determined that "[g]iven the over two-week break between the April 20, 2017, interview and the June 5, 2017, contact there was a sufficient break" from any coercion related to the April 20 interview. The court overruled the motion to suppress as to the June 5 statements.

The letter Said sought to suppress was written by him to his sister and was dated April 29, 2017. In the letter, Said asked his sister to get him a lawyer. He also asked her to inquire about the security camera at the business near the Pioneer Park to determine what angles and areas the camera recorded. He further named a witness who "told them [e]verything," and he asked his sister to "[p]ress [the witness'] [a]ss."

Said contended that the letter was "fruit of the poisonous tree" because he wrote the letter based on information he had learned from the investigators in the allegedly improper interviews of April 19 and 20, 2017. The district court rejected Said's argument. The court reasoned that (1) the April 19 interview and most of the April 20 interview did not violate Said's rights, (2) there was evidence that Said could have learned the information from sources other than the investigators, and (3) writing the letter was Said's voluntary decision and was not a result of police misconduct. The court therefore overruled Said's motion to suppress the letter.

At trial, the court admitted the letter and various statements from the two interviews over Said's renewed objections. Among the statements from the April 20, 2017, interview put into evidence were statements in which Said denied having worn an orthopedic boot on April 12, denied knowing a witness, and denied drinking alcohol on April 12. Other evidence at trial contradicted these statements, and the State used Said's statements in the interview to argue that he was lying in order to hide his involvement in Khamis' death. In the June 5 interview, Said made statements to the effect that he was upset that law enforcement had intercepted the letter he wrote to his sister.

*Motion to Suppress Evidence Obtained*
*From Search of Cell Phone.*

Also prior to trial, Said filed a motion to suppress evidence that had been obtained from a search of his cell phone. The search had been conducted pursuant to a search warrant that had been issued by the court based on Sloan's affidavit. Said argued that (1) the affidavit did not include sufficient information to establish probable cause for the search and (2) the affidavit and the warrant based on it were overbroad and not sufficiently limited in scope to items directly related to any probable cause that might justify the search. Regarding the lack of probable cause, Said argued, inter alia, that Sloan's affidavit omitted information that would have undermined the credibility of Hussein Nuri, who had told investigators, inter alia, that Said had told Nuri that he had struck Khamis with a metal pole. Said asserted Sloan omitted information regarding Nuri's prior conviction for false reporting, Nuri's alcohol problems, and physical evidence that contradicted what Nuri said Said had told him.

In its order overruling the motion to suppress, the district court noted that a second affidavit that resulted in a second search warrant cured the omission. The court nevertheless examined the first affidavit and warrant and determined that the omissions regarding alcohol abuse and contradictory physical evidence were not material because there was no indication Nuri was drunk when he made his statement to Sloan and because the physical evidence

Page 243 of 338

contradicted details but did not contradict the main point of Said's reported statement to Nuri--that he had struck Khamis. The court determined Sloan should have disclosed Nuri's record for honesty, but it concluded that even without Nuri's statements, there was sufficient evidence to support probable cause; such evidence included the security camera recordings depicting the fight between Said and Khamis and Said's letter to his sister. The court reasoned this evidence showed that the cell phone might contain information regarding the fight, such as communications between Said and Khamis that might have led to the fight, as well as location information corroborating Said's presence at the place and time of the fight; the court found that the letter furnished probable cause to believe Said might have used his cell phone prior to his incarceration in order to get information regarding the investigation related to Khamis' assault and death. The court also rejected Said's arguments regarding particularity. As noted above, the court overruled the motion to suppress evidence obtained from the search of the cell phone.

At trial, the court admitted evidence obtained from the search of Said's cell phone over Said's renewed objections. Such evidence included the internet history, which included "Google searches" performed in the days after the fight between Said and Khamis. Terms searched included Said's name, Khamis' name, the name of the hospital to which Khamis was admitted, and local obituaries. The history also included searches regarding head injuries, comas, what happens after a person gets hit in the head with a metal pole, and whether a head injury can cause brain death.

*Evidence Regarding Khamis' Mental State.*

At various points during the trial, Said sought to question witnesses or present evidence regarding Khamis' mental health and prescription drugs in his possession that were used as antipsychotics or to treat depression. Said generally sought to admit the evidence to support his defense that Khamis was the aggressor and that Said acted in self-defense. The court generally sustained the State's objections based on relevance.

During the testimony of the nurse who treated Khamis at the hospital, Said attempted to cross-examine her regarding information she may have gathered regarding a history of "chronic alcoholism," Khamis' "psychological history," and his "prior history involving hospitalizations." The court sustained the State's objections based on relevance.

During the cross-examination of a neurological surgeon who treated Khamis, Said asked whether he was aware of "some history of [Khamis] in respect to a psychiatric history." The court sustained the State's objection.

The State thereafter asked the court, outside the jury's presence, for an order preventing Said from asking questions about Khamis' "history of . . . alcohol abuse . . . and any kind of psychiatric matters." In opposition, Said argued that there was evidence that when Khamis was found, he had in his possession an antidepressant (Prozac) and an antipsychotic (Olanzapine). He further noted that Khamis' autopsy showed the presence of an antidepressant, as well as an anticonvulsant drug (Keppra). Said argued that evidence regarding Khamis' possible use of these drugs was relevant to his claim that Khamis was the initial aggressor in the fight, as well as to issues regarding the cause of Khamis' death.

After further argument and offers of proof, the court ruled that Said could ask the doctor "what effects those specific drugs may cause, if those are somehow relevant," but the court

- 8 -

Page 244 of 338

stated that it would "not allow questions concerning what the drugs are prescribed for and what they treat." The court further ruled that it would not allow questions regarding Khamis' "chronic alcohol use or alcoholism" without Said's showing a "nexus between prior alcohol use and his condition" at relevant times. The court later clarified that by the "effects" of a drug, it meant "the impacts [the drug] would have had on the treatment at [the hospital] on these dates, not its overall why it's prescribed or what it treats."

Said's cross-examination of the neurological surgeon continued thereafter. Said was allowed to ask questions regarding the effects of the drugs Prozac, Olanzapine, and Keppra.

Prior to Said's cross-examination of the pathologist who performed the autopsy on Khamis, the court ruled on a pending evidentiary issue. The court stated as follows:

> Khamis's prior suicide attempt, mental health diagnoses or mental health applications (sic) are not relevant, and even if relevant, applying the [rule] 403 balancing test, the Court finds prejudice as defined in [rule] 403 substantially outweighs the probative value and inquiry is not allowed.
>
> . . . .
>
> As to the medications discussed in the toxicology report, as to each medication, . . . Said's counsel may inquire on cross-examination of whether the medication led to death, led to his death, or changed the doctor's opinion as to the cause of death. Counsel may also inquire if he observed injuries consistent with seizures [or] a fall related to seizures.
>
> . . . .
>
> Counsel may not inquire as to what mental health treatments or drugs found in . . . Khamis's system are prescribed for . . . .
>
> Counsel may, subject to other objections, inquire as to whether the witness knows if Keppra . . . leads to aggressive behavior. . . .
>
> . . . .
>
> [Regarding Prozac,] I find there's an insufficient nexus . . . regarding aggression, while it has a number of other reported side effects, there's simply not enough nexus on the record before the Court . . . .
>
> . . . .
>
> . . . I make the same findings as to [Olanzapine] and will not allow cross-examination on that.

*Impeachment of Nuri.*

At trial, Nuri testified, inter alia, that Said told him that Said "struck [Khamis] with a metal stick in the back of his head twice in the alley." On cross-examination, Said asked Nuri if he had ever been convicted of "a crime of dishonesty"; Nuri replied that he had. Said began another line of questioning, to which the State objected. Outside the jury's presence, the parties argued to the court regarding Said's anticipated lines of questioning.

One issue was that in Nuri's deposition, he had admitted that on his Facebook page he had lied by saying that he had graduated from a certain university and that he had worked for a certain bank. Said argued that this evidence was admissible pursuant to Neb. Evid. R. 608, Neb. Rev. Stat. § 27-608(2) (Reissue 2016). After the parties argued the issue, the court ruled that it

Page 245 of 338

would not allow Said to cross-examine Nuri "concerning false claims made by . . . Nuri on his Facebook page."

Another issue arose at trial regarding Nuri's pending criminal charges. Specifically, Nuri had entered a plea to a pending criminal charge and was awaiting sentencing. Said argued that evidence of the pending charge was relevant to show bias and a motive to fabricate testimony. The court ruled that it would be improper to cross-examine Nuri regarding the pending charge, because "there's been no showing that [Nuri] has any specific inducement such as a promise of leniency" and "Nuri has pled to whatever the underlying facts are."

*DNA Evidence and "Uninterpretable" Samples.*

In his defense, Said called witnesses, including Brandy Porter, a forensic scientist in the Nebraska State Patrol Crime Laboratory. Porter testified that she had performed DNA analysis on multiple samples that were collected in connection with this case, including samples from several stains on the clothing Khamis was wearing. She compared the samples to reference samples from Khamis, Said, and Kouri.

Said questioned Porter regarding her testing of certain specific stains. With regard to those specific stains, Porter testified that her analysis indicated that Khamis was included as a potential major contributor and that Said was excluded. Testing of certain stains indicated a second contributor, and Porter testified that Said was excluded as the second contributor.

On cross-examination, the State questioned Porter regarding general matters pertaining to DNA analysis. As part of that questioning, Porter testified that an "interpretable profile is a DNA profile in which I can make conclusions regarding the identity of the individuals in that sample" and that "[i]f we can't make scientific conclusions regarding the identity of the individuals, the profile is deemed uninterpretable." She further testified, "Uninterpretable means that the sample is either too complex or it doesn't have enough genetic information present for me to make an accurate scientific conclusion regarding who is present in that sample."

The State then asked whether "[i]n this particular case, [Porter had made] a determination that any of the items that [she] tested were uninterpretable." The court allowed Porter to answer over Said's objection, and Porter replied in the affirmative. Thereafter, the State asked Porter about her testing of various specific samples other than those about which Said had questioned her on direct. Porter testified over Said's continuing objections that as to some of those specific samples, results regarding contributors other than Khamis were determined to be uninterpretable, and that as to other specific samples, Khamis was included and both Said and Kouri were excluded as contributors.

At the end of the State's cross-examination of Porter, the court gave the following limiting instruction:

> Evidence of uninterpretable DNA results is offered only to show you what steps were taken to test the items by the analyst. DNA testing results that are uninterpretable are not to be considered by you as evidence that anyone contributed to that DNA sample -- to the sample. The jury may not speculate as to who may or may not have contributed to any sample that was listed or tested, the result of which was considered to be uninterpretable.

- 10 -

Page 246 of 338

On redirect, Said elicited from Porter testimony that she was able to make scientific conclusions on 19 samples from which Said was excluded and that Said was not included in any samples for which she was able to make scientific conclusions.

*Verdict, Sentence, and Appeal.*

Said rested his defense after Porter's testimony, and the State chose not to present rebuttal evidence. Thereafter, the court read its instructions and submitted the case to the jury. The jury found Said guilty of second degree murder and use of a weapon to commit a felony. The district court sentenced Said to imprisonment for 60 to 80 years for second degree murder and for a consecutive term of 25 to 30 years for use of a weapon.

Said appeals his convictions and sentences.

## ASSIGNMENTS OF ERROR

Said claims that the court erred when it (1) admitted statements he made in the April 20 and June 5, 2017, interrogations and in the letter to his sister; (2) admitted evidence from the search of his cell phone; (3) prohibited him from presenting evidence regarding Khamis' mental state and his use of drugs and alcohol; (4) denied him the right of confrontation and the opportunity to impeach Nuri's testimony with evidence of specific instances of conduct and bias; and (5) allowed testimony by Porter regarding DNA testing that Said asserts was inconclusive and therefore irrelevant and unfairly prejudicial.

## STANDARDS OF REVIEW

[1] In reviewing a motion to suppress a statement based on its claimed involuntariness, including claims that law enforcement procured it by violating the safeguards established by the U.S. Supreme Court in *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), an appellate court applies a two-part standard of review. Regarding historical facts, an appellate court reviews the trial court's findings for clear error. Whether those facts meet constitutional standards, however, is a question of law, which an appellate court reviews independently of the trial court's determination. *State v. Guzman*, 305 Neb. 376, 940 N.W.2d 552 (2020).

[2] In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review. *State v. Stelly*, 304 Neb. 33, 932 N.W.2d 857 (2019). Regarding historical facts, an appellate court reviews the trial court's findings for clear error, but whether those facts trigger or violate Fourth Amendment protection is a question of law that an appellate court reviews independently of the trial court's determination. *Id.*

[3,4] In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules; judicial discretion is involved only when the rules make discretion a factor in determining admissibility. *State v. Lierman*, 305 Neb. 289, 940 N.W.2d 529 (2020). Where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, an appellate court reviews the admissibility of evidence for an abuse of discretion. *Id.*

[5-7] A trial court exercises its discretion in determining whether evidence is relevant and whether its prejudicial effect substantially outweighs its probative value. *State v. Stubbendieck,*

- 11 -

302 Neb. 702, 924 N.W.2d 711 (2019). An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id.* A trial court's determination of the relevancy and admissibility of evidence must be upheld in the absence of an abuse of discretion. *State v. Carpenter*, 293 Neb. 860, 880 N.W.2d 630 (2016).

The determination of whether procedures afforded an individual comport with constitutional requirements for procedural due process presents a question of law. *State v. McCurry*, 296 Neb. 40, 891 N.W.2d 663 (2017).

### ANALYSIS

*Any Error in the Admission of Statements From Two*
*Interviews Was Harmless Error, and District*
*Court Did Not Err When It Overruled Said's*
*Motion to Suppress the Letter.*

Said claims that the court erred when it admitted statements he made in the April 20 and June 5, 2017, interviews and in the letter to his sister. He argues that at the beginning of the April 20 interview, he invoked with clear and unequivocal language his right to remain silent, and that all statements he made thereafter, including statements made in that interview as well as statements made in the letter and in the June 5 interview, were inadmissible as having been obtained in violation of his *Miranda* rights. We determine that admission of Said's statements in the April 20 and June 5 interviews was harmless error and that overruling the motion to suppress the letter was not error.

We first consider the April 20, 2017, interview. The district court determined that Said clearly invoked his *Miranda* rights 21 minutes into the interview, and it therefore suppressed statements he made after that point. But the court determined his statements prior to that point were voluntary and therefore admissible. Said argues that the entire interview should have been suppressed because he clearly and unequivocally invoked his rights at the beginning of the interview.

[8-10] The safeguards of *Miranda* ensure that the individual's right to choose between speech and silence remains unfettered throughout the interrogation process. *State v. Clifton*, 296 Neb. 135, 892 N.W.2d 112 (2017). If the suspect indicates that he or she wishes to remain silent or that he or she wants an attorney, the interrogation must cease. *Id.* The right to choose between speech and silence derives from the privilege against self-incrimination. *Id.* In order to require cessation of custodial interrogation, the subject's invocation of the right to counsel must be unambiguous and unequivocal. *State v. Guzman*, 305 Neb. 376, 940 N.W.2d 552 (2020). Once a person has invoked his or her right to remain silent, the police must scrupulously honor that right. *State v. Bauldwin*, 283 Neb. 678, 811 N.W.2d 267 (2012).

In its brief, the State argues that persons who are already incarcerated when they are interviewed are not subject to the same pressures against which the *Miranda* protections are designed to operate and that therefore, such interviews are not considered custodial interrogations. The State cites two U.S. Supreme Court cases, *Howes v. Fields*, 565 U.S. 499, 132 S. Ct. 1181, 182 L. Ed. 2d 17 (2012), and *Maryland v. Shatzer*, 559 U.S. 98, 130 S. Ct. 1213, 175 L. Ed. 2d 1045 (2010). The State acknowledges that unlike the present case, the cases cited

- 12 -

Page 248 of 338

involved persons who had already been convicted and sentenced and were serving a set term in prison. The State urges that the reasoning in the two U.S. Supreme Court cases be extended to cases involving pretrial detainees, like Said at the time of the statements at issue. Said contends that extending these cases to a pretrial defendant detained for a short period is not proper.

We need not resolve this dispute, because, despite raising this argument, the State concedes that on the facts of this case--including the fact that at the time of the April 20, 2017, interview, Said had been in detention for fewer than 24 hours--"viewed objectively, the coercive atmosphere and pressure from April 19th most likely still existed on April 20th and Said was in custody for purposes of *Miranda* on that date." Brief for appellee at 26. The State further notes that the officer twice asked Said whether he was willing to talk without a lawyer and that both times, Said replied that he was not. Although it argues that asking the second time was a proper clarification of Said's response to the first question, the State concedes that when the officer continued urging Said to talk, it was an interrogation that should not have been undertaken after Said clearly invoked his *Miranda* rights. The State concludes in its brief that "the district court erred when it admitted Said's statements from the April 20th interview." Brief for appellee at 28.

[11-13] Having conceded that the court erred when it admitted Said's statements from the April 20, 2017, interview, we turn to the State's further argument that the erroneous admission of statements from the April 20 interview was harmless error. We have said that even constitutional error does not automatically require reversal of a conviction if that error was a trial error and not a structural defect. *State v. DeJong*, 287 Neb. 864, 845 N.W.2d 858 (2014). The admission of an improperly obtained statement is a trial error, and so its erroneous admission is subject to harmless error analysis. *Id.* To conduct harmless error review, we look to the entire record and view the erroneously admitted evidence relative to the rest of the untainted, relevant evidence of guilt. *Id.* Harmless error review looks to the basis on which the trier of fact actually rested its verdict; the inquiry is not whether in a trial that occurred without the error a guilty verdict would surely have been rendered, but whether the actual guilty verdict rendered in the questioned trial was surely unattributable to the error. *State v. Nolan*, 292 Neb. 118, 870 N.W.2d 806 (2015).

The State notes that in the April 20, 2017, interview, Said did not confess to the crime under investigation and that therefore, the statements in and of themselves did not incriminate him. Said argues that admission of the statements was not harmless error, because although he did not admit to any wrongdoing, he made several statements that were contradicted by other evidence presented by the State. He argues that admission of the statements harmed him because the State used the statements to call his credibility into issue even though he was not a witness in the trial. In addition and in a similar vein, Said objected to portions of the prosecution's closing arguments as having put Said's credibility into issue when he was not a witness and had not otherwise put his character at issue in the case. In lieu of declaring a mistrial, the court at Said's request provided a curative instruction that the jury was to "determine only the credibility of the witnesses who testify" and that it was "to disregard any statements, written or spoken, concerning the credibility of persons who did not testify."

In response to Said's arguments, the State contends that there was evidence aside from Said's statements to police which indicated that Said had attempted to diminish his involvement in the altercation with Khamis. The State further contends that the prosecutor's references in

- 13 -

closing arguments to Said's statements on April 20, 2017, were brief. The State thus asserts that error regarding the April 20 statements was harmless.

We agree that the error in admitting statements from the April 20, 2017, interview was harmless error. Viewing the statements in the context of "the entire record" and "the rest of the untainted, relevant evidence of guilt," see *State v. DeJong*, 287 Neb. at 884, 845 N.W.2d at 874-75, we determine the guilty verdict in this case was "surely unattributable" to the error in admitting the statements, see *State v. Nolan*, 292 Neb. at 140, 870 N.W.2d at 825. There was other evidence that Said attempted to diminish his involvement in this case, and to the extent the statements might have been seen as evidence of his credibility, the court made clear to the jury in the curative instruction that Said's credibility was not at issue.

We next consider the April 29, 2017, letter that Said wrote to his sister. Said argues that the "fruit of the poisonous tree" doctrine applies because the letter and its contents were the result of the April 20 interview and that because that interview was in violation of his rights, the letter should also be inadmissible.

[14] The fruit of the poisonous tree doctrine generally provides that evidence must be excluded as fruit of the poisonous tree if it is discovered by the exploitation of illegal police conduct. See *State v. Gorup*, 275 Neb. 280, 745 N.W.2d 912 (2008). The State argues that the fruit of the poisonous tree doctrine is generally applied only in the context of a search or seizure in violation of the Fourth Amendment and that to the extent that Said contends the content of the letter is at issue, it is questionable whether the doctrine even applies in the context of such a Fifth Amendment violation. However, assuming it does apply in such context, the State argues that the doctrine would not require exclusion of the letter, because the letter was not discovered through governmental exploitation of the April 20, 2017, interview.

[15] For purposes of our analysis in this case, we assume the doctrine applies. Not all evidence is fruit of the poisonous tree simply because it would not have come to light but for the illegal action of the police. *State v. Bray*, 297 Neb. 916, 902 N.W.2d 98 (2017). The question is whether the evidence has been obtained by exploiting the primary illegality or has instead been obtained by means sufficiently distinguishable so as to be purged of the primary taint. *Id.*

Said argues that the letter was the fruit of the poisonous tree of the April 20, 2017, interview because he was prompted to write the letter based on what he learned about the police investigation in the interview. But the police did not use information they obtained in the April 20 interview to discover the letter, and therefore, the police did not exploit any information they had learned from the interview in order to discover the letter. Said's action of writing the letter in response to the interview broke any causal connection between the State's actions in the interview and the State's later discovery of the letter, and such discovery was sufficiently attenuated from the April 20 interview. See *State v. Bray, supra.* We conclude that the discovery of the letter was not a result of police exploitation of the April 20 interview. The letter was not inadmissible under the fruit of the poisonous tree doctrine, and therefore, the court did not err when it overruled Said's motion to suppress the letter.

We finally consider the June 5, 2017, interview. Said argues that statements he made in the June 5 interview should have been suppressed because that interview was a continuation of the questioning in the April 20 interview in which he had invoked his right to remain silent. He cites *State v. Pettit*, 227 Neb. 218, 417 N.W.2d 3 (1987), and argues that there was not a

- 14 -

Page 250 of 338

significant passage of time after the April 20 interview and that the subject of the June 5 interview was the same transaction or occurrence that was the subject of the April 20 interview.

The State concedes in its brief that the *Pettit* factors were not met, but it argues that any error in admitting statements from the June 5, 2017, interview was harmless error. We agree. Said argues that admission of the June 5 statements was not harmless, because he made statements to the effect that he was upset that law enforcement had intercepted the letter he wrote to his sister. He asserts the State used the letter and Said's sensitivity to the interception of the letter as an integral part of its closing argument. But we agree with the State's argument that Said's statements that he was upset the police found the letter was "inconsequential" in light of the fact that the letter itself was admissible. Brief for appellee at 33. Viewed in the context of the entire record and properly admitted evidence, we determine the verdict was surely unattributable to any error in admitting statements from the June 5 interview.

*District Court Did Not Err When It Overruled*
*Motion to Suppress Evidence From Search*
*of Said's Cell Phone.*

Said next claims that the court erred when it admitted evidence from the search of his cell phone. He contends that the warrant authorizing the search and the application supporting the warrant lacked both probable cause and particularity. We conclude that the district court did not err when it overruled the motion to suppress evidence obtained from the search.

The Fourth Amendment to the U.S. Constitution provides that warrants may not be granted "but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." The Nebraska Constitution, under article I, § 7, similarly provides that "no warrant shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

[16-18] We first consider Said's argument that probable cause to support the search warrant was lacking. In reviewing the strength of an affidavit submitted as a basis for finding probable cause to issue a search warrant, an appellate court applies a totality of the circumstances test. *State v. Goynes*, 303 Neb. 129, 927 N.W.2d 346 (2019). The question is whether, under the totality of the circumstances illustrated by the affidavit, the issuing magistrate had a substantial basis for finding that the affidavit established probable cause. *Id.* Probable cause sufficient to justify issuance of a search warrant means a fair probability that contraband or evidence of a crime will be found. *Id.* In evaluating the sufficiency of an affidavit used to obtain a search warrant, an appellate court is restricted to consideration of the information and circumstances contained within the four corners of the affidavit, and evidence which emerges after the warrant is issued has no bearing on whether the warrant was validly issued. *Id.*

Said contends that the affidavit submitted by Sloan did not assert adequate facts to show that evidence related to the investigation would be found on Said's cell phone. He maintains instead that the affidavit contained only generalized assertions to the effect that "'persons who commit crimes use cell phones.'" He similarly maintains that the district court's reasoning for finding probable cause was that generally, cell phone data can often lead to evidence, and asserts that such reasoning was erroneous.

- 15 -

Page 251 of 338

Contrary to Said's characterization of the affidavit, the record shows that in addition to statements setting forth the officer's general knowledge of how cell phones may be used by a person who is committing or has committed a crime and how evidence of the crime may be found on a cell phone, the affidavit also sets forth specific information regarding the officer's investigation of this case and Said's involvement in the altercation with Khamis. This information included allegations that Said had communicated with others, including his sister and Nuri, and that he sought information regarding the assault of Khamis and the police investigation of the assault. These actions could establish that Said was interested in learning about the police investigation of the assault, and the court could infer that if Said was looking for such information from other people, he likely also used his cell phone to search the internet for such information. In the affidavit, the officer listed the specific types of evidence he was seeking to find on the cell phone. The listing of items included various references that made clear the officer was seeking information regarding the relationship of Said and Khamis and communications regarding an altercation between the two on April 12, 2017.

We conclude the warrant was supported by probable cause. The affidavit, including allegations of evidence such as the video depicting the altercation between Said and Khamis, gave the officer reason to suspect Said in the investigation of the assault of Khamis. The affidavit also made clear that the officer was seeking evidence related to that investigation and that relevant evidence could be found on Said's cell phone. The court therefore did not err when it determined the affidavit established probable cause that evidence relevant to the investigation of the assault of Khamis could be found on Said's cell phone.

[19] We next consider Said's argument that the warrant lacked particularity. In addition to the requirement of probable cause, the Fourth Amendment and article I, § 7, contain a particularity requirement that a warrant describe the place to be searched and the persons or things to be seized. The particularity requirement for search warrants is distinct from, but closely related to, the requirement that a warrant be supported by probable cause. *State v. Goynes*, 303 Neb. 129, 927 N.W.2d 346 (2019). A purpose of the particularity requirement for a search warrant is to prevent the issuance of warrants on loose, vague, or doubtful bases of fact. *Id.*

[20] To satisfy the particularity requirement of the Fourth Amendment, a warrant must be sufficiently definite to enable the searching officer to identify the property authorized to be seized. *Id.* The degree of specificity required depends on the circumstances of the case and on the type of items involved. *Id.* A search warrant may be sufficiently particular even though it describes the items to be seized in broad or generic terms if the description is as particular as the supporting evidence will allow, but the broader the scope of a warrant, the stronger the evidentiary showing must be to establish probable cause. *Id.* As relevant to the instant case, a warrant for the search of the contents of a cell phone must be sufficiently limited in scope to allow a search of only that content that is related to the probable cause that justifies the search. *Id.*

[21] The purpose of the particularity requirement as it relates to warrants is to prevent general searches, and whether a warrant is insufficiently particular depends upon the facts and circumstances of each case. *State v. Stelly*, 304 Neb. 33, 932 N.W.2d 857 (2019). As a general rule, the description must enable officers to ascertain and identify the items to be seized with reasonable certainty and little chance of confusion or uncertainty. *Id.*

- 16 -

Page 252 of 338

With regard to particularity, Said's argument focuses specifically on paragraph (i) of Sloan's affidavit, which requests a search of internet history "relat[ed] to the purchase or manufacturing of re-encoded devices and/or the sale of the proceeds of the transactions." He notes that the request was not to search for internet history evidencing the crime being investigated and as a result merely served to request a general license to search the internet history. Said also argues that the request and the warrant issued thereon are overbroad because they allowed a search of internet history without limiting the search to evidence related to the homicide investigation. Said argues this was similar to the "'any information'" warrant that we found to be insufficiently particular in *State v. Henderson*, 289 Neb. 271, 854 N.W.2d 616 (2014). See brief for appellant at 37.

[22] We conclude the warrant was sufficiently particular. The record shows that the reference to a different crime in paragraph (i) of the affidavit was clearly an inadvertent error that was carried over to this warrant from a form in a prior matter. An inadvertent defect in a search warrant may be cured by reference to the affidavit used to obtain the warrant if the affidavit is incorporated in the warrant or referred to in the warrant and the affidavit accompanies the warrant. *State v. Stelly, supra.* In this case, the affidavit was referred to in the warrant, and although it also contained the erroneous reference to a different crime, the inadvertent defect was only one item in a list of the types of evidence to be searched. The error is apparent in context because other items in the list, as well as the warrant and the affidavit read as a whole, make clear that the evidence being sought in the search of the cell phone was evidence related to the investigation of the assault of Khamis and not the crime that was erroneously referenced.

We also find that the warrant was not overbroad. Although the warrant listed various types of data that could be searched for on the cell phone, it listed specific types of evidence, and unlike the warrant in *Henderson*, it did not authorize a search for "'any information.'" See brief for appellant at 37. We distinguished *Henderson* in *State v. Goynes*, 303 Neb. 129, 144, 927 N.W.2d 346, 357 (2019), in which we found a warrant to be sufficiently particular because it identified that it was a warrant for the investigation of a specific homicide and because although it included an expansive list of types of data that could be searched, it "did not contain such unqualified language that would permit the search of the cell phone for '"any other information."'" In the list of types of data that could be searched in this case, various items specified data "relating to the relationship of Khamis and [Said] and communication pertaining to the physical altercation occurring on [April 12, 2017]." Although this specification was not included as to each item, the warrant read as a whole was clear that the search was limited to data that would provide evidence relevant to the investigation of Said in connection with the assault of Khamis.

Furthermore, as the State notes, there was no danger that the officer executing the search warrant would not know the target of the search was evidence related to the homicide investigation regarding Khamis, because the same officer prepared the affidavit and conducted the search. We also note that the evidence found and used in the trial was relevant to this crime and that there is no indication any of the evidence found and used in this trial was not relevant to the probable cause that supported the warrant.

- 17 -

Page 253 of 338

We determine that the warrant in this case was supported by probable cause and was sufficiently particular. We therefore conclude the district court did not err when it overruled Said's motion to suppress evidence found in the search of the cell phone.

*District Court Did Not Abuse Its Discretion or Deprive*
*Said of Complete Defense When It Refused Evidence*
*Regarding Khamis' Mental Health, Alcoholism,*
*and Use of Prescription Drugs.*

Said next claims the court erred when it prohibited him from presenting evidence regarding Khamis' mental health issues, his alcoholism, and his use of prescription drugs. He asserts that such evidence was critical to his defense because it was relevant to his defense that Khamis was the aggressor and that Said therefore acted in self-defense; he also argues the evidence was relevant to his alternate defense that Khamis' death was caused by something other than a blow to the head inflicted by Said. He further argues that he was deprived of a fair trial when he was prohibited from presenting such evidence. We determine that the court did not abuse its discretion when it excluded the evidence based on its determinations regarding relevance and that such rulings did not deprive Said of his right to present a complete defense.

Said's arguments focus on evidence regarding (1) Khamis' history of alcoholism; (2) Khamis' mental health history, which included suicidal tendencies; and (3) the purposes, side effects, and adverse reactions associated with prescription drugs that were found on Khamis' person or found in his system at the autopsy. Said argues that such evidence was relevant to his defenses that (1) Khamis was the first aggressor and Said acted in self-defense and that (2) Khamis died from a cause unrelated to the altercation between Said and Khamis.

[23] In view of Said's assignments of error, we consider the propriety of the evidentiary rulings and whether the rulings deprived Said of the right to present a complete defense. We have stated that whether rooted directly in the Due Process Clause of the 14th Amendment or in the Compulsory Process or Confrontation Clauses of the 6th Amendment, the federal Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense. *State v. McCurry*, 296 Neb. 40, 891 N.W.2d 663 (2017). However, the accused does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence. *Id.*

[24,25] Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Neb. Evid. R. 401, Neb. Rev. Stat. § 27-401 (Reissue 2016). Relevancy requires only that the probative value be something more than nothing. *State v. Munoz*, 303 Neb. 69, 927 N.W.2d 25 (2019). But, "[e]vidence which is not relevant is not admissible." Neb. Evid. R. 402, Neb. Rev. Stat. § 27-402 (Reissue 2016). And, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Neb. Evid. R. 403, Neb. Rev. Stat. § 27-403 (Reissue 2016). Unfair prejudice means an undue tendency to suggest a decision based on an improper basis. *State v. Stubbendieck*, 302 Neb. 702, 924 N.W.2d 711 (2019).

- 18 -

We first address the court's rulings in light of Said's argument that each type of evidence noted above was relevant to his defense of self-defense. Regarding evidence of Khamis' alcoholism, the court ruled that the evidence was not relevant and not admissible without a showing of a nexus between his alcoholism and aggressive behavior at the time of his altercation with Said. The court similarly found that Khamis' "prior suicide attempt" and other mental health issues were not relevant. The court also stated that to the extent evidence regarding Khamis' mental health history might have minimal probative value regarding his behavior at the time of the altercation, such probative value was substantially outweighed by the risk of unfair prejudice.

Regarding the prescription drugs found on Khamis' person--Prozac and Olanzapine--the court found that there was not a sufficient showing that either drug caused aggression. The State further notes that Olanzapine was not found to be in Khamis' system and that therefore, there was no showing Khamis was under its effect at the time of the altercation. The drugs found in Khamis' system in the toxicology screening were an "anticonvulsant and . . . an antidepressant." The antidepressant was presumably Prozac, and the court found that although there was evidence that "hostility" and "agitation" were shown to be side effects of Prozac, Said had not established a nexus between Prozac and aggressive behavior. The court's ruling allowed Said to ask questions regarding the effects of the anticonvulsant drug, Keppra, and Said did elicit testimony that effects of Keppra include "aggression, agitation, depression, and irritability."

We determine that it was within the court's discretion to rule that without a showing of a nexus between the offered evidence and Khamis' behavior at the time of the altercation, the evidence was not relevant to whether Khamis might have been the aggressor and whether Said acted in self-defense. Regarding whether exclusion of the evidence deprived Said of a fair trial, as noted above, the right to present a complete defense does not allow a defendant "an unfettered right to offer testimony that is . . . otherwise inadmissible under standard rules of evidence." *State v. McCurry*, 296 Neb. 40, 66, 891 N.W.2d 663, 681 (2017). In further support of our understanding that Said was not harmed by the district court's ruling, we also note that Said was able to present relevant evidence in regard to self-defense, including asking a witness about Khamis' alcohol use at or around the time of the altercation, and he was able to present evidence that aggression is a side effect of Keppra, which was found in Khamis' system. Using this evidence, Said was able to argue in closing arguments that the combination of alcohol and Keppra could have caused Khamis to be aggressive in the altercation. And the jury was instructed on Said's theory of self-defense.

We next address the relevance of the evidence to Said's defense theory that Khamis may have died from a cause unrelated to the altercation. Said did not appear to argue that Khamis' history of alcoholism or mental health contributed to his death; instead, Said asserted that Khamis could have sustained injuries in a fall that was caused by the effects of the prescription drugs or the combination of the drugs and alcohol. The State notes that although there was evidence Olanzapine increased the risk of falls, Olanzapine--as mentioned earlier--was not found in Khamis' system at the autopsy. The State also argues that neither Prozac nor Keppra was shown to cause falls.

The court's ruling focused on limiting evidence regarding the reasons the drugs might be prescribed, which would be indicative of Khamis' mental health issues. But the court ruled that

- 19 -

Said could "inquire on cross-examination of whether the medication led to [Khamis'] death, . . . or changed the doctor's opinion as to the cause of death," and whether the doctor "observed injuries consistent with seizures [or] a fall related to seizures." We conclude that the court's limitation of testimony regarding the purpose for which the drugs might have been prescribed was within its discretion to determine relevance and that the court did not abuse its discretion in so ruling. We also conclude that Said was not deprived of the right to present a complete defense as to the defense theory that the cause of death might have been something other than the injury inflicted by Said. The court's rulings allowed Said to ask whether the drugs that were in Khamis' system led to his death or whether the presence of the drugs changed the doctor's conclusion that his death was a result of the blunt force trauma to Khamis' head. We conclude that the court did not abuse its discretion in its rulings regarding the relevance of the offered evidence, and we further conclude that such rulings did not deprive Said of his right to present a complete defense as to either of the asserted defenses.

*District Court Did Not Err and Did Not Deprive*
*Said of Right of Confrontation When It Refused*
*Cross-Examination on Issues It Determined*
*to Lack Probative Value.*

Said next claims the court erred and violated his right of confrontation when it denied him the opportunity to impeach Nuri's testimony with evidence of specific instances of Nuri's conduct and bias. Said argues that he should have been allowed to impeach Nuri through cross-examination pursuant to § 27-608(2) regarding alleged misrepresentations made by Nuri on his Facebook page and regarding a pending charge against Nuri to which he had pled but in connection with which he had not yet been sentenced. We determine that the court did not abuse its discretion and did not violate Said's right of confrontation when it disallowed cross-examination on these topics.

Said argues that cross-examination on these topics should have been allowed pursuant to § 27-608(2), which provides:

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, . . . may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness be inquired into on cross-examination of the witness . . . concerning his character for truthfulness or untruthfulness . . . .

Said argues that Nuri's testimony that Said confessed to Nuri that he had struck Khamis with a metal pole was crucial to his conviction and that therefore, it was critical to Said's defense to impeach Nuri's testimony. He argues that Nuri's "misrepresentations . . . on his Facebook page" and his pending criminal charge were both relevant to his truthfulness and that limiting Said's cross-examination of Nuri violated his right of confrontation. See brief for appellant at 47.

An accused's constitutional right of confrontation is violated when either (1) he or she is absolutely prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness or (2) a reasonable jury would have received a significantly different impression of the witness' credibility had counsel been

- 20 -

permitted to pursue his or her proposed line of cross-examination. *State v. Swindle*, 300 Neb. 734, 915 N.W.2d 795 (2018).

In reference to § 27-608(2), we note that Said was not attempting to present extrinsic evidence of "[s]pecific instances of conduct" and instead was seeking to cross-examine Nuri on these topics. Therefore, the relevant portion of § 27-608(2) is that which allows such cross-examination "in the discretion of the court, if probative of truthfulness or untruthfulness." The statute therefore commits to the court's discretion determinations of whether a line of cross-examination is allowed as being probative of truthfulness or untruthfulness. Regarding Nuri's misrepresentations on Facebook, we find it was reasonable and within the court's discretion to determine that these instances were not probative of the truthfulness or untruthfulness of Nuri's testimony in this case. Regarding Nuri's pending criminal case, the court reasonably determined that the charge was not relevant to bias or a motivation to fabricate testimony, because Nuri had entered a plea, he had done so without benefit of a plea agreement, and Said made no offer of proof to show that Nuri's testimony in this case was an attempt to curry favor with the State in connection with sentencing in that case. We find no abuse of the discretion afforded to the court under § 27-608(2) in either of these rulings.

We also find no violation of Said's right to confrontation. Said was not completely prohibited from cross-examining Nuri regarding his credibility, and such cross-examination included Nuri's admission that he had been convicted of a crime of dishonesty. We do not think that testimony regarding the misrepresentations on Facebook or the pending charge would have given the jury a significantly different impression of Nuri's credibility.

*District Court Did Not Err When It Allowed Evidence That*
*Results of Certain DNA Tests Were Uninterpretable.*

Said finally claims the court erred when on cross-examination it allowed testimony by Porter regarding uninterpretable DNA testing results that Said asserts were "inconclusive" and therefore irrelevant and unfairly prejudicial. Brief for appellant at 48. We conclude that the court did not abuse its discretion when it allowed the cross-examination.

[26] Said relies on *State v. Johnson*, 290 Neb. 862, 862 N.W.2d 757 (2015), in which we held that it was error to admit evidence of inconclusive DNA testing results. We reasoned in *Johnson* that inconclusive results "are irrelevant because they do not help the fact finder assess whether the defendant is or is not the source of the sample," and we further reasoned that "because of the significance that jurors will likely attach to DNA evidence, the value of inconclusive testing results is substantially outweighed by the danger that the evidence will mislead the jurors." 290 Neb. at 883-84, 862 N.W.2d at 774.

The State concedes that the "uninterpretable" results in this case are the functional equivalent of "inconclusive" results under *Johnson*. Brief for appellee at 60. But the State distinguishes its introduction of the results in this case from the facts in *Johnson* because it did not offer the evidence in its case in chief. Instead, the State argues, it cross-examined Porter regarding uninterpretable results in order to counter an impression created by Porter's testimony presented by Said. The State argues that the otherwise inadmissible evidence regarding inconclusive DNA testing results became relevant and admissible pursuant to the specific contradiction doctrine.

- 21 -

[27] The specific contradiction doctrine is said to apply when one party has introduced admissible evidence that creates a misleading advantage and the opponent is then allowed to introduce previously suppressed or otherwise inadmissible evidence to counter the misleading advantage. *State v. Carpenter*, 293 Neb. 860, 880 N.W.2d 630 (2016). It is not enough that the opponent's contradictory proffered evidence is merely relevant; the initial evidence must have reasonably misled the fact finder in some way. *Id.* In *Carpenter*, we stated that specific contradiction is one aspect of the "opening the door" doctrine. "Opening the door" is a rule of expanded relevancy which authorizes admitting evidence that would otherwise be irrelevant in order to respond to (1) admissible evidence which generates an issue or (2) inadmissible evidence admitted by the court over objection. *State v. Lierman*, 305 Neb. 289, 940 N.W.2d 529 (2020).

In this case, Porter testified that she subjected several bloodstains on Khamis' clothing to DNA testing. Testing of some of the stains excluded Said as a contributor, but the testing of several other stains yielded results that Porter described as uninterpretable. Said called Porter as a witness in his defense and questioned her generally about the extent of the testing she had done, and he questioned her specifically about the stains for which testing had excluded Said as a contributor. On cross-examination, the State elicited testimony that several other stains yielded uninterpretable results, and the court allowed the testimony over Said's objections.

The holding in *State v. Johnson*, 290 Neb. 862, 862 N.W.2d 757 (2015), and the specific contradiction and "opening the door" doctrines all derive from a court's evidentiary determinations of relevance and whether probative value is outweighed by unfair prejudice. As such, determinations in this regard are committed to the trial court's discretion and we uphold such determinations in the absence of an abuse of discretion. See *State v. Carpenter, supra.*

We find no abuse of discretion by the district court in its DNA-related rulings. The court could reasonably have determined that by questioning Porter generally about the scope of her testing and then questioning her about the results of only the samples that excluded him, Said may have created a misleading impression that the testing of all samples excluded him. The State elicited Porter's otherwise inadmissible testimony regarding the results that were uninterpretable, and the court reasonably could have determined that such evidence had become relevant to counter the potential misleading impression that all samples excluded Said. To the extent there was a risk of unfair prejudice from testimony regarding inconclusive results as we recognized in *Johnson*, the court reasonably could have determined that such concern was adequately mitigated by its limiting instruction that the evidence was "offered only to show what steps were taken" and was "not to be considered . . . as evidence that anyone contributed to that DNA sample." We conclude that in this context, the court's admission of the testimony was not an abuse of discretion.

## CONCLUSION

Having rejected each of Said's assignments of error, we affirm Said's convictions and sentences.

AFFIRMED.

FUNKE, J., participating on briefs.

- 22 -

Page 258 of 338

THE STATE OF NEBRASKA, ss.

I hereby certify that I have compared the foregoing copy of an opinion filed by this

Court with the original on file in my office and that the same is a correct copy of the original.

IN TESTIMONY WHEREOF, I have hereunto set my hand and caused to be affixed the Seal of this Court, in the City of Lincoln.

Clerk/Deputy Clerk

SUPREME COURT NO.        S-18-901

TRIAL TRIBUNAL NO.       CR17-742

DATE OPINION FILED       July 2, 2020

DATE OPINION CERTIFIED   July 2, 2020

Page 259 of 338

Copies of State Record

Document B

District Court of Hall County
Nebraska

Order on Petitioners Post Conviction
Relief

FILED

AUG 2 6 2021

JENNIFER POPTEN
CLERK OF DISTRICT COURT

## IN THE DISTRICT COURT OF HALL COUNTY, NEBRASKA

STATE OF NEBRASKA,

    **Plaintiff,**

     vs.

AHMED MOHAMED SAID,

    **Defendant.**

CASE NO.  CR 17-742

**<u>ORDER DENYING HEARING
ON DEFENDANT'S MOTION FOR
POSTCONVICTION RELIEF</u>**

This matter comes on for consideration of the defendant's Motion for Postconviction Relief filed on July 15, 2021. In ruling upon this motion, the Court has reviewed and considered the following: the Bill of Exceptions of hearings on Motions to Suppress held on April 12, 2018, April 24, 2018 and May 23, 2018; the Court's Orders overruling the Motions to Suppress filed on May 7, May 6 and July 5, 2018; the Bill of Exceptions of the Defendant's trial held from June 18 to June 22, 2018; the Opinion of the Nebraska Supreme Court affirming the defendant's conviction filed on July 2, 2020; the Mandate of the Nebraska Supreme Court filed with the Clerk of the Hall County District Court on September 21, 2020; the defendant's Motion for Postconviction Relief; and the State's response which was received on August 16, 2021.

Now on this 26th day of August 2021, the Court, being fully advised, **FINDS** that the Defendant's Motion for Postconviction Relief should be denied without hearing for the following reasons.

In ruling on this motion the Court has followed the well-established rules regarding postconviction relief.

> Under Strickland, a defendant has the burden to show that (1) counsel performed deficiently—that is, counsel did not perform at least as well as a lawyer with ordinary training and skill in criminal law—and (2) this deficient performance actually prejudiced the defendant in making his or her defense. The prejudice

 

1D08

1

Page 312 of 338

prong of the ineffective assistance of counsel test requires that the defendant show a reasonable probability that but for counsel's deficient performance, the result of the proceeding in question would have been different. State v. Williams, 295 Neb. 575, 591, 889 N.W.2d 99, 114 (2017).

Additionally, the Nebraska Supreme Court has held that a person seeking postconviction relief must:

> ...allege facts which, if proved, constituted a denial of his or her rights under the United States or Nebraska Constitution, causing the judgment against the defendant to be void or voidable. The appellant in a postconviction proceeding has the burden of alleging and proving that the claimed error is prejudicial...an evidentiary hearing on a motion for postconviction relief is required on an appropriate motion containing factual allegations which, if proved, constitute an infringement of the movant's rights under the Nebraska or Federal Constitution. An evidentiary hearing is not required when the motion alleges only conclusions of fact or law. Further, when the motion properly alleges an infringement of the defendant's constitutional rights, an evidentiary hearing should be denied when the records and files affirmatively show that the defendant's is entitled to no relief. State v. Dean, 264 Neb. 42, 46, 47, 645 N.W.2d 528, 533, (2002). (Citations omitted.)

## FACTUAL BACKGROUND

Mr. Said was charged with Murder in the Second Degree and Use of a Deadly Weapon to Commit a Felony by an Information filed on November 22, 2017. The defendant was represented at all stages of the proceedings to date by the Nebraska Commission on Public Advocacy.

Prior to trial, the defendant filed several Motions to Suppress that sought to suppress statements the defendant had made as well as evidence (a letter the defendant wrote to his sister after being interrogated and a search of his cell phone). The defendant's Motions to Suppress were, in the main, overruled.

The defendant was convicted by a jury of the charges and sentenced. He then appealed. On July 2, 2020, the Nebraska Supreme Court affirmed the defendant's convictions, although the

2

Court found that this Court had erred in finding the Defendant's statements during the interviews were not made in violation of Miranda but found the error was harmless. The Court further found that the letter recovered by law enforcement and used against the defendant (Exhibit 10) was not the fruit of the poisonous tree. The Supreme Court stated:

> But the police did not use information they obtained in the April 20 interview to discover the letter, and therefore, the police did not exploit any information they had learned from the interview in order to discover the letter. Said's action of writing the letter in response to the interview broke any causal connection between the State's actions in the interview and the State's later discovery of the letter, and such discovery was sufficiently attenuated from the April 20 interview. We conclude that the discovery of the letter was not a result of police exploitation of the April 20 interview. The letter was not inadmissible under the fruit of the poisonous tree doctrine, and therefore, the court did not err when it overruled Said's motion to suppress the letter. State v. Said, 306 Neb. 314, 334, 335, 945 N.W.2d 152, 170 (2020).

The Mandate of the Nebraska Supreme Court was received and executed on September 21, 2020. Mr. Said has now filed a Motion for Postconviction Relief alleging three grounds for postconviction relief. (Although ground one contains two separate allegations.)

## DISCUSSION

### GROUND ONE

The defendant's primary complaint regarding his first ground for postconviction relief involves Exhibit 10, the letter he wrote to his sister after being interviewed by law enforcement on April 20 of 2017. The defendant claims his attorneys provided ineffective assistance by challenging the letter under the fruits of the poisonous tree doctrine. The defendant alleges that counsel should have asserted the letter was inadmissible under the "voluntariness test" and the "totality of the circumstances test" (defendant's motion at page 8).

3

The defendant alleges that the interviewing police officer at the hearing on the Motion to Suppress admitted "that the contents and information contained prejudicial Exhibit 10 evidence is not the product of the defendant's free and rational choice." (Defendant's Motion at Page 9.)   An examination of the testimony cited by the defendant does not support his claim that an admission was made by the officer that the letter (Exhibit 10) was a compelled statement.  The officer admitted statements were made after Miranda warnings were given but that does not mean that he admitted that statements made by the defendant to his sister after the fact were involuntary.  The Court notes that there is no allegation that Mr. Said's sister was an agent to the State of Nebraska or of law enforcement.

None of the other testimony presented at the hearing on the Defendant's Motion to Suppress held on April 12, 2018, supports his claim of compulsion (i.e. lack of voluntariness).  The defendant's petition contains no factual allegations that would support a conclusion other than that "Said's action of writing the letter in response to interview broke any causal connection between the State's actions and the interview, and the State's later discovery of the letter." Id. at 334 Neb.

In other words, there is nothing to indicate that a statement made by the defendant after an involuntary police interview to a non-state actor (his sister) is the product of compulsion by law enforcement.  The defendant, therefore, has failed to present factual allegations showing he is entitled to postconviction relief.

In his first grounds for postconviction relief, the defendant also alleges that he is entitled to relief based on limitations placed on the presentation of evidence concerning

4

Page 315 of 338

the victim's medical and mental condition. The limitations the defendant complains of were raised in his direct appeal and the Nebraska Supreme Court ruled that the defendant's right to present a defense was not violated. Id. at 342-344 Neb. Defendant's other claims regarding the possibility of other causes for the victim's injuries are not supported by the entire record. They are simply factual conclusions in his Motion for Postconviction Relief and not a basis to grant him a hearing.

## GROUND TWO

The defendant for his second ground seeking postconviction relief alleges plain error. The defendant's allegations of "plain error" are an attempt to relitigate the factual issues decided by the jury and do not constitute plain error.

> Plain error exists where there is an error, plainly evident from the record but not complained of at trial, which prejudicially affects a substantial right of a litigant and is of such a nature that to leave it uncorrected would cause a miscarriage of justice or result in damage to the integrity, reputation, and fairness of the judicial process. State v. Davenport, 17 Neb. App. 1, 3, 755 N.W.2d 816, 820 (2008).

In this case, the defendant's conclusory statements do not show an issue for which a hearing on postconviction relief should be granted. The evidence the defendant complains of was placed before the jury and they rejected it. No plain error having been shown to exist, defendant is not entitled to postconviction relief on the second ground he alleges.

## GROUNDS FOR RELIEF THREE

The defendant in his third ground for relief alleges that he was prejudiced by his attorneys' failure to file a Motion to Suppress a video retrieved from a local business and presented at trial. The defendant is not entitled to an evidentiary hearing on the grounds set forth on his third grounds. The defendant has failed to allege any factual allegations, which would

5

constitute a basis for a finding that the State's action in retrieving the video and in displaying the video to the jury violated his constitutional rights.  Because his rights were not violated a Motion to Suppress would not have been successful and his attorneys were not ineffective because they did not file a futile motion.

The defendant bases his claim upon unfair prejudice under Nebraska Rule of Evidence Neb. Rev. Stat. § 27-403.  The Court would note that a Motion in Limine could have been filed under Neb. Rev. Stat. § 27-403 but there is nothing in the record before the Court that would indicate that there was unfair prejudice from the playing of the video to the jury.

## CONCLUSION

For the above and foregoing reasons, the Court denies the defendant's request for a hearing and denies his request for postconviction relief.

**IT IS SO ORDERED.**

BY THE COURT:

_____
MARK J. YOUNG
DISTRICT JUDGE

6

Page 317 of 338

Copies of State Record

Document C

Opinion And Judgement on Appeal

of Petitioner Post Conviction

Appeal

October 11, 2022
IMAGE ID N22284LW8NSC, FILING ID 0000025807

**CLERK
NEBRASKA SUPREME COURT
COURT OF APPEALS**

IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

STATE V. SAID

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

v.

AHMED M. SAID, APPELLANT.

Filed October 11, 2022.   No. A-21-745.

Appeal from the District Court for Hall County: MARK J. YOUNG, Judge. Affirmed.

Ahmed M. Said, pro se.

Douglas J. Peterson, Attorney General, and Austin N. Relph for appellee.

PIRTLE, Chief Judge, and BISHOP and ARTERBURN, Judges.

ARTERBURN, Judge.

### INTRODUCTION

This is a postconviction appeal. Appellant, Ahmed M. Said, was charged with second degree murder and use of a deadly weapon to commit a felony in relation to the death of Adulma Khamis in April 2017. Said was found guilty by a jury of both counts and sentenced to consecutive terms of 60 to 80 years' imprisonment and 25 to 30 years' imprisonment. On direct appeal, the Nebraska Supreme Court affirmed Said's conviction and sentences. See *State v. Said*, 306 Neb. 314, 945 N.W.2d 152 (2020). Said timely filed a motion for postconviction relief. The district court denied the motion without an evidentiary hearing. Said appeals. He alleges that the court erred in failing to find that his trial counsel was ineffective and that there was plain error on the record. For the reasons set forth herein, we affirm.

- 1 -

## BACKGROUND

On April 13, 2017, Khamis was found unconscious outside a residence five blocks from Pioneer Park in Grand Island, Nebraska. Khamis died six days later as a result of a closed-head injury caused by blunt force trauma. Police investigated the death as a homicide, and eventually developed Said as a suspect. Said was ultimately charged with second degree murder and use of a deadly weapon to commit a felony.

*Said's Letter and Motion to Suppress.*

Prior to trial, Said's counsel filed a motion to suppress statements Said made during interviews with law enforcement on four separate occasions as well as a letter Said wrote to his sister while in jail awaiting trial. A more detailed description of all the interviews and the motion to suppress can be found at *State v. Said, supra.* For purposes of the issues raised in this appeal, we need only focus on Said's April 20, 2017, interview with law enforcement and the letter.

On April 19, 2017, Said was arrested on a charge unrelated to the present case. Grand Island Police Officer Steve Sloan and a second officer interviewed Said on that date regarding the unrelated charge. On April 20, Sloan returned to speak with Said alone and asked him if he would be willing to discuss the assault of Khamis. Sloan read Said his *Miranda* rights and asked whether he would speak without an attorney to which Said replied, "uh no." Sloan then repeated the question and Said again replied, "no I do not." Sloan then continued trying to convince Said to talk, explaining that this was "something . . . different" than what was discussed the day prior. Said finally agreed to speak to Sloan for about 21 minutes before stating, "no more talking." The interview continued for another 20 minutes before concluding. The trial court ruled that the statements after the 21 minute mark should be suppressed. The court determined that although Said stated that he did not want to speak to Sloan without an attorney at the beginning of the interview, Sloan's followup statements were an attempt to clarify the subject matter of the interview and that Said spoke voluntarily up until the 21 minute mark when he said "no more talking." On direct appeal, the Supreme Court held that the trial court erred in this determination and that the entirety of the April 20 interview should have been suppressed. However, the court found that the failure to suppress all of the interview was harmless error. The court noted the State's argument that Said made no confession or statements in the interview that were in and of themselves incriminating. The court then concluded:

> We agree that the error in admitting statements from the April 20, 2017, interview was harmless error. Viewing the statements in the context of the "entire record" and "the rest of the untainted, relevant evidence of guilt," [citations omitted] we determine the guilty verdict in this case was "surely unattributable" to the error in admitting the statements. [Citations omitted.] There was other evidence that Said attempted to diminish his involvement in this case, and to the extent the statements might have been seen as evidence of his credibility, the court made clear to the jury in the curative instruction that Said's credibility was not at issue.

*State v. Said,* 306 Neb. 314, 333, 945 N.W.2d 152, 169 (2020).

Nine days after the April 20, 2017, interview with Sloan, Said wrote a letter to his sister while still in detention. In the letter, Said wrote:

- 2 -

I don't know how to start but the man that I told you about had died the same day I got arrested and the homicide investigators are on my ass and Masalah had told them everything that I've told 'em so please before they put their case on me bond me out or get me an attorney aka lawyer cause I don't wanna spend my whole life in prison Wallahi. Sis I never thought I would be in a position like this so please get me a good lawyer that will dismiss the case, cause I read on the newspaper and they said they have solved a homicide case. I don't know if it's the one that involves me or I don't really know. And please do me a favor and go to the car shop by the park and ask them does the side camera work and pretend like you live at the white house located in the alley way cause if the camera does work it's a done deal for me cause that's where it all happened and Hussein told them everything so if you see 'em press his ass, so yeah & please don't write back cause they will read everything that comes in, NOT OUT. Please & thank you.

Said's attorney moved to suppress this letter as being tainted by the substance of the April 20, 2017, interview, due to Sloan's disregard of Said's invocation of *Miranda*. Said argued that the letter should be suppressed because he wrote it based on information he received from the investigators during the allegedly improper April 20 interview. The trial court denied Said's motion to suppress the letter because (1) the court had concluded that the interviews on April 19 and most of the interview on April 20 did not result in a violation of Said's constitutional rights; (2) evidence during the hearing showed that Said had access to information contained in the letter from sources independent of the interviews; and (3) writing the letter constituted voluntary conduct on Said's part and was not a result of police misconduct.

At trial, the letter was admitted into evidence as exhibit 10. During the State's closing arguments, the letter was read in its entirety and the State referenced the letter several times as it related to the other evidence presented at trial. On direct appeal, Said alleged the trial court erred in overruling his motion to suppress and admitting the letter into evidence. Again, Said argued that the letter was tainted by the improper April 20, 2017, interview with Sloan. The crux of his argument was that in violating Said's rights after he invoked *Miranda*, law enforcement pressured Said with adverse information. Said argued that writing the letter was a "scared and panicked reaction" and that had Sloan ceased questioning on April 20 he never would have felt pressured to write the letter.

The Supreme Court held that the trial court did not err in overruling Said's motion to suppress the letter. The court assumed without deciding that the "Fruit of the Poisonous Tree" doctrine applied in the case. However, the court found that there was no causal connection between the April 20, 2017, interview and the later discovery of Said's letter to his sister because Said's action of writing the letter several days after the interview broke the causal chain. In reaching this conclusion, the court posed the relevant question as "whether the evidence [had] been obtained by exploiting the primary illegality or [had] instead been obtained by means sufficiently distinguishable so as to be purged of the primary taint." *State v. Said*, 306 Neb. 314, 334, 945 N.W.2d 152, 170 (2020). The court found that law enforcement's discovery of the letter was not due to any police exploitation of the April 20 interview.

-3-

Certified Page 3 of 8

*Other Evidence Presented at Trial.*

The State's theory of the case at trial was that Said hit Khamis over the head with a metal pole during the course of an altercation. The State believed that Khamis remained conscious for several hours after being struck. He wandered away from the park where the altercation took place until he reached the residence where he was found the next morning. The State supported this theory with testimony from Hussein Nuri. Nuri testified that he was familiar with both Khamis and Said as all three were "regulars" at Pioneer Park in Grand Island. In the days following Khamis' death, officers investigated the area around Pioneer Park and spoke to community members about Khamis' movements on April 12, 2017, the day of the altercation. Law enforcement spoke to Nuri several times because he had been in jail with Khamis the night before Khamis was assaulted. Following one police interview, Nuri testified, Said pulled him aside, told him to speak in Somali so others would not understand, and asked Nuri what the officers were talking to him about. It was at this time, according to Nuri, that Said told him that he had hit Khamis in the back of the head with a metal pole the night before he was found.

Internet searches on Said's phone revealed that from April 13, 2017, the date Khamis was found, to April 19, Said was seeking out information related to Khamis. Said's internet searches included searches for his own name, Khamis' name, Nuri's name, obituaries, and warrants. He also searched for information regarding serious head injuries, local hospitals, intensive care units, critical condition, and what happens after someone is hit on the head with a metal pole. These searches occurred prior to law enforcement releasing any information about the cause of Khamis' death to the public.

The State also presented evidence from a security camera video of Khamis and Said fighting near an alley on the evening of April 12, 2017. The security camera footage came from a business near Pioneer Park. The parties stipulated at trial that the video depicted a fist fight between Khamis and Said. However, the video did not show the actual blow that resulted in Khamis' death. The footage showed Khamis and Said engage in a short fight and then move off camera toward the alleyway. According to the State's theory, that is when Said hit Khamis' head with a metal pole.

Said challenged the State's trial theory by arguing that the State's timeline was impossible. Instead, according to the defense, the death blow was much more likely to have occurred at the residence where Khamis was found, rather than being inflicted by Said in the alleyway earlier in the night. Defense counsel pointed out inconsistencies between the severity of the injury suffered and the State's contention that Khamis remained conscious for several hours after being hit on the head. Trial counsel emphasized that the surveillance video did not show Said hitting Khamis with a metal pole, but rather showed a simple fist fight where Khamis could be characterized as the aggressor. During cross-examination, Said's counsel attempted to impeach Nuri's testimony as well as the testimony of the State's other witnesses. Ultimately, the jury found Said guilty of both counts alleged in the information. The district court sentenced Said to 60 to 80 years' imprisonment for his conviction of second degree murder and to 25 to 30 years' imprisonment for his conviction of use of a deadly weapon. The court ordered the sentences to run consecutively. On direct appeal, the Supreme Court affirmed Said's convictions and sentences.

- 4 -

On July 14, 2021, Said filed a motion for postconviction relief. Said alleged his trial counsel was ineffective for making an unsuccessful argument with regard to his motion to suppress the contents of the letter written to his sister, and for failing to file a motion in limine to exclude the surveillance video showing Khamis and Said engaged in an altercation. Said also alleged that there was plain error when the trial court allowed Nuri to testify. The district court denied Said's motion without an evidentiary hearing. The court found that Said's claims were conclusory, not supported by the record, and that he failed to state a claim for which postconviction relief could be granted. Said now appeals.

## ASSIGNMENTS OF ERROR

In this appeal, Said claims the district court erred in denying his motion for postconviction relief without an evidentiary hearing. Said's assignments of error, restated and renumbered, are that the district court erred in (1) finding that his trial counsel was not ineffective for arguing that the letter to Said's sister should be suppressed as fruit of law enforcement's unlawful interview with Said instead of arguing that Said's writing of the letter was involuntary given the totality of the circumstances; (2) finding that his trial counsel was not ineffective for failing to file a motion in limine to exclude surveillance video footage of the fight between Said and Khamis on April 12, 2017; and (3) failing to find that the court's receipt of Nuri's testimony was plain error.

## STANDARD OF REVIEW

In appeals from postconviction proceedings, an appellate court reviews de novo a determination that the defendant failed to allege sufficient facts to demonstrate a violation of his or her constitutional rights or that the record and files affirmatively show that the defendant is entitled to no relief. *State v. Lotter*, 311 Neb. 878, 976 N.W.2d 721 (2022). On appeal from the denial of postconviction relief without an evidentiary hearing, the question is not whether the movant was entitled to relief by having made the requisite showing; instead, it must be determined whether the allegations were sufficient to grant an evidentiary hearing. *State v. Henderson*, 301 Neb. 633, 920 N.W.2d 246 (2018).

## ANALYSIS

In a proceeding under the Nebraska Postconviction Act, the movant is required to allege facts which, if proved, constitute a violation or infringement of constitutional rights, and the pleading of mere conclusions of fact or of law is not sufficient to require the court to grant an evidentiary hearing. *State v. Henderson, supra*. An evidentiary hearing must be granted where the facts alleged, if proved, would justify relief, or when a factual dispute arises as to whether a constitutional right is being denied. *Id.*

In order to establish a right to postconviction relief based on a claim of ineffective assistance of counsel, the defendant has the burden, in accordance with *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), to show that counsel's performance was deficient; that is, counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *State v. Armendariz*, 289 Neb. 896, 857 N.W.2d 775 (2015). The defendant must also show that counsel's deficient performance prejudiced the defense in his or her case. *Id.* The prejudice prong of a claim of ineffective assistance of counsel is established when the

- 5 -

defendant shows a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *Id.* A reasonable probability does not require that it be more likely than not that the deficient performance altered the outcome of the case; rather, the defendant must show a probability sufficient to undermine confidence in the outcome. *Id.*

In this appeal, Said asserts two claims of ineffective assistance of his trial counsel. First, Said claims his counsel was ineffective for attempting to suppress the letter under the Fruit of the Poisonous Tree doctrine instead of asserting that the letter was involuntarily written due to police coercion. Second, he asserts that his counsel was ineffective for failing to file a motion in limine to exclude the surveillance video which depicted Said and Khamis engaging in a mutual fist fight. We will address each assertion in turn.

*Said's Letter to His Sister.*

Said argues that his counsel was ineffective for attempting to suppress the letter written to his sister under the Fruit of the Poisonous Tree doctrine because the doctrine is generally inapplicable to violations of *Miranda*. Instead, Said argues, counsel should have moved to suppress exhibit 10 as being involuntarily written. We find no merit to this claim.

Exhibit 10 was the letter Said wrote to his sister while he was still in custody. This letter was written by Said in his cell, nine days after the April 20, 2017, interview. The Supreme Court found that Said's constitutional rights were violated because law enforcement ignored Said's invocation of his right to remain silent. However, the court found that, assuming the Fruit of the Poisonous Tree doctrine was applicable, the letter would still be admissible. The court found the letter was not the result of exploitation of the April 20 interview.

In his brief to this court, Said argues that his counsel should have instead moved to exclude the letter under the voluntariness test as stated in *Haynes v. State of Wash.*, 373 U.S. 503, 83 S. Ct. 1336, 10 L. Ed. 2d 513 (1963). The voluntariness test requires the trial court to assess the totality of the circumstances to determine whether the defendant freely, voluntarily, and without compulsion or inducement of any sort by law enforcement confessed or made an incriminatory statement. In other words, the question is whether the defendant's will was overborne such that the statement complained of was compelled in violation of his right to due process. *Id.* Coercive police conduct is a necessary predicate to a finding that a statement is involuntary. *State v. Montoya*, 304 Neb. 96, 933 N.W.2d 558 (2019). Applying this test to Said's letter shows that Said's contention is meritless.

Said's basis for excluding the letter is somewhat ambiguous. To the extent that Said's argument is that the April 20, 2017, interview compelled him to write the letter, that issue was resolved by the Supreme Court on direct appeal. There, the Supreme Court held that there was no causal connection between the April 20 interview and the writing of the letter nine days later. We will not relitigate this issue.

Assuming Said actually is arguing that there was some other police coercion that made the writing of the letter itself involuntary, his argument is affirmatively refuted by the record. Evidence presented at trial demonstrates that Said wrote the letter outside the presence of any law enforcement officer. Nothing in the record shows coercion or even a request by law enforcement officers to get Said to write the letter. In fact, the letter itself suggests that Said wrote the letter specifically with the intention of keeping it away from law enforcement as indicated by the last

- 6 -

Certified Page 6 of 8

line where he says, "please don't write back cause they will read everything that comes in, NOT OUT." Said's claim that his counsel was ineffective for failing to argue the voluntariness test fails. A defense counsel will not be found ineffective for failing to raise an argument that is meritless. *State v. Stricklin*, 300 Neb. 794, 916 N.W.2d 413 (2018). The district court did not err in denying Said an evidentiary hearing on this claim.

Finally, in relation to his ineffective assistance of counsel claims, Said argues but does not specifically assign as a separate error that his counsel was also ineffective for failing to challenge other evidence that he believes flows from the receipt of the letter into evidence. According to Said, the letter was the basis for the search warrant of Said's cell phone, which provided inculpatory evidence, such as the internet search terms, that was admitted at trial. He further reasons that the admission of the letter led the court to limit his defense when the court ruled that evidence of the victim's mental health issues was not relevant and therefore not admissible. An alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court. *State v. Thomas*, 303 Neb. 964, 932 N.W.2d 713 (2019). Here, it is questionable whether Said's assignments of error encompass these arguments. However, assuming without deciding that we can consider this argument, the argument fails. The record affirmatively establishes that the letter was properly admitted into evidence at trial. As such, since the letter was admissible, any evidence that flowed from law enforcement's discovery of the letter was not tainted.

*Motion in Limine for Surveillance Video.*

Said also claims that his counsel was ineffective for failing to file a motion in limine to exclude the surveillance video which depicted Said and Khamis engaging in a fist fight in Pioneer Park the night before Khamis' body was found. According to Said, the video should have been excluded under Neb. Rev. Stat. § 27-403 (Reissue 2016) because the risk of unfair prejudice substantially outweighed the probative value. This claim is also affirmatively refuted by the record. The surveillance video clearly constituted relevant evidence. The video depicting Khamis and Said engaged in a fist fight just during the evening before the fatal blow took place is highly probative, particularly when viewed in light of the testimony of Nuri and the information gleaned regarding Said's internet searches. Khamis died as a result of a blow to the head. Had defense counsel filed a motion in limine to exclude the video, it would have been unsuccessful. As stated earlier, defense counsel is not ineffective for refraining from making meritless arguments. The district court did not err in dismissing this claim without an evidentiary hearing.

*Plain Error.*

Finally, Said argues that the district court erred by failing to find plain error committed by the trial court in allowing Nuri to testify. In determining whether a motion for postconviction relief contains factual allegations that, if proved, constitute an infringement of the movant's constitutional rights and whether the records and files affirmatively show the defendant is entitled to no relief, we consider whether the allegations are procedurally barred. *State v. Stelly*, 308 Neb. 636, 955 N.W.2d 729 (2021). "Plain error cannot be asserted in a postconviction proceeding to raise claims of error by the trial court." *State v. Allen*, 301 Neb. 560, 572, 919 N.W.2d 500, 510

(2018). We will not address Said's plain error claim here. The district court correctly dismissed this claim without an evidentiary hearing.

## CONCLUSION

For the reasons stated above, we affirm the decision of the district court to deny Said's motion for postconviction relief without an evidentiary hearing.

AFFIRMED.

- 8 -

AO 241
(Rev. 01/15)

Page 1

# Petition for Relief From a Conviction or Sentence
## By a Person in State Custody

### (Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus)

### Instructions

1. To use this form, you must be a person who is currently serving a sentence under a judgment against you in a state court. You are asking for relief from the conviction or the sentence. This form is your petition for relief.

2. You may also use this form to challenge a state judgment that imposed a sentence to be served in the future, but you must fill in the name of the state where the judgment was entered. If you want to challenge a federal judgment that imposed a sentence to be served in the future, you should file a motion under 28 U.S.C. § 2255 in the federal court that entered the judgment.

3. Make sure the form is typed or neatly written.

4. You must tell the truth and sign the form. If you make a false statement of a material fact, you may be prosecuted for perjury.

5. Answer all the questions. You do not need to cite law. You may submit additional pages if necessary. If you do not fill out the form properly, you will be asked to submit additional or correct information. If you want to submit a brief or arguments, you must submit them in a separate memorandum.

6. You must pay a fee of $5. If the fee is paid, your petition will be filed. If you cannot pay the fee, you may ask to proceed in forma pauperis (as a poor person). To do that, you must fill out the last page of this form. Also, you must submit a certificate signed by an officer at the institution where you are confined showing the amount of money that the institution is holding for you. If your account exceeds $ _____ , you must pay the filing fee.

7. In this petition, you may challenge the judgment entered by only one court. If you want to challenge a judgment entered by a different court (either in the same state or in different states), you must file a separate petition.

8. When you have completed the form, send the original and __0__ copies to the Clerk of the United States District Court at this address:

Clerk, United States District Court
111 S. 18th Plaza, Suite 1152
Omaha, NE 68102

If you want a file-stamped copy of the petition, you must enclose an additional copy of the petition and ask the court to file-stamp it and return it to you.

9. **CAUTION:** You must include in this petition all the grounds for relief from the conviction or sentence that you challenge. And you must state the facts that support each ground. If you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.

10. **CAPITAL CASES:** If you are under a sentence of death, you are entitled to the assistance of counsel and should request the appointment of counsel.



RECEIVED
APR 0 8 2025
CLERK
U.S. DISTRICT COURT

